A̓NGELE PODVIN *vs.* PEPPERELL MANUFACTURING COMPANY.

York.    Opinion December 22, 1908.

*Master and Servant.    Obvious Dangers.    Assumption of Risk.    Negligence.
Set-Screws.*

1.  If the employer furnishes the operative a machine, strong, in good repair and without dangerous features not visible to an observing operator or made known to him and such as the employer should have known, he, the employer, discharges his full legal duty to the operative in that respect. He can otherwise use machines of such pattern, detail of construction, and roughness of finish as he prefers, leaving to the operative free choice to operate the machine or not as he prefers.

2.  The employer of an operative upon a machine is not legally obliged to have the set-screws upon the machine so countersunk or otherwise fixed so as to remove all danger from them, provided they are plainly visible to an observing operative.

3.  An operative undertaking to operate a particular machine, without stipulation to the contrary assumes the risk of injury not only from those features of the machine called to his attention, but also those open to observation. It is the duty of the operative to acquaint himself with, at least, all the visible features of the machine before undertaking its operation.

4.  An operative's ignorance of set-screws in the machine does not relieve him of the risk of danger from them where they are plainly visible and easily seen.

5.  In this case the set-screws projecting five-eighths of an inch above the surface of the collar on the small shaft, were plainly visible to an observing operative being near and in front of a window. The female operative of mature years had operated the machine in that condition for nineteen years during which time she cleaned the machine about the set-screws and the floor under them at least twice a week. *Held:* That she was chargeable with knowledge of the set-screws and not having stipulated to the contrary, had assumed the risk of danger from them.

6.  Although the female operative had the duty to pick up articles as they fell to the floor under the shaft bearing the set-screws, she nevertheless, under the circumstances above stated, assumed the risk of her hair becoming entangled in the set-screws and cannot recover for any injury resulting therefrom. Being chargeable with knowledge of the screws, she is also chargeable with knowledge of the obvious danger of injury if she allowed her hair to become entangled in them.

On motion by defendant. Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff while operating a spinning machine in the defendant's mill, and which said machine the plaintiff alleged to be "unsafe, unsuitable, inconvenient, out of repair and dangerous in that there projected from a shaft upon or connected with said machine a set-screw nut or bolt, the same projecting a certain distance, to wit one inch," and that the set-screw caught in her hair and "stripped her scalp from neck to eyebrow." Plea, the general issue with brief statement as follows: "That any and all the risks, dangers and conditions of which the plaintiff complains in her writ and declaration were assumed by the plaintiff prior to the injuries alleged to have been received by the plaintiff."

The plaintiff recovered a verdict for $2500, and the defendant filed a general motion to have the verdict set aside.

The case is stated in the opinion.

*Cleaves, Waterhouse & Emery*, for plaintiff.

*Nathaniel B. Walker, and George F. & Leroy Haley*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

EMERY, C. J. This case is one of that class now come to be known as "set-screw cases." The evidence for the plaintiff and the uncontradicted and credible evidence for the defendant establishes the following as the version to be taken as true. The plaintiff was a woman fifty-nine years of age in the employ of the defendant company in its cotton mill, and had charge of and operated a somewhat complex spinning machine known as an "intermediate." Two revolving metal cones, one above the other, ran lengthwise this machine under the spindles. The lower cone was within two inches of the floor. The upper cone was twenty-four and one-half inches above and directly over the lower cone. The small end of the upper cone was connected with the end of a shaft by a metal collar held and tightened in place by set-screws projecting five-eighths of an

inch above the surface of the collar. The diameter of the collar and cone at this end was two and one-half inches. When in operation, this cone revolved at a speed of two hundred and eighty revolutions a minute. When at rest, the collar and set-screws were plainly visible, being opposite a large window with plenty of light and with nothing to conceal them from any one looking the machine over. The whole machine, including the cones and set-screws, was of standard pattern and in common use in cotton mills.

The plaintiff had operated a similar machine for eight or ten years, and this particular machine for fifteen years, during which time no change had been made in the cone or set-screws. In addition to tending the machine in its operation, she, as was her duty, cleaned it as often as twice a week and oftener of the dirt and cotton waste that accumulated on its various parts including the cones and set-screws. She cleaned all around the gears and wheels and also the ends of the cones and the set-screws, getting out with a short handled brush the cotton accumulating there. She also washed the floor under the cones and machine at least twice a week.

By the vibration of the machine while in operation, empty bobbins would at times be shaken from their shelf or creel and fall upon the floor under the machine. It was the duty of the plaintiff to pick these fallen bobbins from the floor as they fell and restore them to their places. Frequently, to do this, she would need to reach her hand and arm in between the two cones to reach the fallen bobbins where they lay on the floor. She usually did so while the cones were revolving, and this practice was well known to the defendant's superintendent and overseers in that room. Her attention was never called by them or any one to the set-screws, or to any danger from set-screws.

At last, after fifteen years of such work by the plaintiff on and about this machine, as she was one day reaching down between the two revolving cones to pick up a fallen bobbin from the floor her woman's hair became entangled in the set-screws on the upper cone and her scalp torn from her head. There was of course a danger that while so picking up fallen bobbins from the floor the plaintiff

might be hurt by the revolving set-screws. Was that danger a risk cast upon the defendant, or a risk assumed by the plaintiff?

The plaintiff claims that the risk was upon the defendant, because it did not have the set-screws so countersunk or otherwise fixed as to remove all danger of injury from them. This claim is not well founded. It is not the legal duty of an employer of labor upon machines to provide and use the safest possible, or even safest, known machines. There must be no weakness, no want of repair, no dangerous feature not visible to an observing operative or made known to him, and such as the employer should have known. If such a machine be provided the employer has done his full legal duty in that respect. He can otherwise use machines of such pattern, detail of construction, and roughness of finish as he prefers, leaving to the operative free choice to operate it or not as he prefers. *Wormell* v. *Maine Central R. R. Co.*, 79 Maine, 397; *Bryant* v. *Paper Co.*, 100 Maine, 171; *Rooney* v. *Sewall, &c., Cordage Co.*, 161 Mass. 153; *Neats* v. *National Heeling Machine Co.*, 65 Fed. Rep. 940; *Richards* v. *Rough*, 53 Mich. 212.

But the plaintiff further claims that the risk was upon the defendant and had not been assumed by her because her attention had not been called to the set-screws and to the danger of injury from them. This claim also is without foundation. An operative by agreeing to operate and operating a particular machine, without stipulation to the contrary, assumes the risk of injury not only from those features of the machine called to his attention but also from those open to observation. The law is well stated by the Massachusetts court in *Rooney* v. *Sewall, &c., Cordage Co.*, 161 Mass. 153, a case where an operative was injured by a projecting set-screw of which he did not know and had never heard. The court said: "When the plaintiff entered the defendant's service, he impliedly agreed to assume all the obvious risks of the business, including the risk of injury from the kind of machinery then openly used. It is not material whether he examined the machinery before making his contract or not. He could look at it if he chose, or he could say, 'I do not care to examine it; I will agree to work in this mill, and I am willing to take my risk in regard to that.' In either case,

he would be held to contract in reference to the arrangement and kind of machinery then regularly in use by his employer, so far as these things were open and obvious, so that they could readily be ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and perils of the service in which he was about to engage.  A projecting set-screw is a common device for holding the collar on a shaft, although there is a safer kind of set-screw in common use.  Under its contract with the plaintiff the defendant owed him no duty to box the pulley or shaft, or to change the set-screw for a safer one."

In the case at bar the set-screws were open and exposed to observation, and plainly visible to anyone making the most cursory examination of the machine and its operation.  They were not in any obscurity, being well lighted from a window but a few feet away. They were directly visible to an operative washing the floor under them or cleaning cotton waste from them.  It is urged, however, that they were not visible while the collar was revolving two hundred and eighty times a minute.  There is no evidence to that effect and we do not find it self-evident that a collar only two and one-half inches in diameter bearing set-screws projecting five-eighths of an inch, and revolving at that speed would show a smooth surface. But, however that may be, there is no evidence that the collar was always revolving at that or any speed.  It undoubtedly was often at rest when the set-screws could be plainly seen.  There is no suggestion of immaturity, or want of experience, or want of intelligence on the part of the plaintiff.  It was her duty to acquaint herself with the machine she was to operate, and, in the absence of stipulation to the contrary, she assumed not only the risks pointed out to her but those open and visible.  If she did not observe them she none the less assumed the risk of them.  *Ragon* v. *Toledo, &c., Ring Co.,* 97 Mich. 265, and cases infra.

It has been held in several decided cases that ignorance of set-screws in machinery does not relieve the operative of the risk of danger from them, where they are open to observation.  *Rooney* v. *Sewall, &c., Cordage Co.,* 161 Mass. 153; *Ford* v. *Mt. Tom Sulphite Co.,* 172 Mass. 544; *Archibald* v. *Cygolf Shoe Co.,*

186 Mass. 213; *Kennedy* v. *Merrimack Paving Co.*, 185 Mass. 442; *Mutter* v. *Lawrence Mfg. Co.*, 195 Mass. 517.

The danger to a woman from allowing her hair to become entangled in set-screws revolving as these were is too obvious for comment.

Under the law and the facts of the case, the plaintiff must be held to have assumed the risk of the injury she received.

*Verdict set aside.*