HERBERT ELMER WYMAN, pro ami, *vs.* ALBERT P. BERRY.

Kennebec.    Opinion September 21, 1909.

*Master and Servant.    Vice-Principal.    Contributory Negligence.*

The plaintiff, who was the servant of a third party, was loaned by his employer to the defendant's servant, Wood, for a day's work on the defendant's farm, under circumstances which warranted the jury in finding that Wood had authority to procure the service. The plaintiff was then sixteen years of age. Wood and the plaintiff undertook to cut up some straw for bedding. For this purpose they used a feed cutter, the power for which was supplied by a gasolene engine. Wood fed the straw into the machine, where it was cut by knives affixed to a shaft revolving at a speed of about 900 revolutions a minute. The plaintiff was directed to remove the chopped straw after it left the machine, and carry it away in a basket, or baskets. The chopped straw, as it came from the spout, so called, of the feed cutter, either fell on the floor or, if the plaintiff was there with his basket, into the basket. Around the spout was a projection,—a rim or flange,—and from the outer rim of this flange, at the top, in to the revolving knives, was a distance of from three and a half to four inches. The spout was eleven inches wide, and about sixteen inches from top to bottom, and the top of it was about thirty inches from the floor. The knives were covered by a hood, and were not visible to the plaintiff, in any position he would naturally assume in removing the bedding. The plaintiff had never worked about a feed cutter before, and was not

acquainted with its mechanism. He did not know the exact position of the knives. But he must have known that knives, or some cutting apparatus, was within the machine. The plaintiff was told in the beginning to take the straw away from the machine, "the straw that piled up." Soon the machine clogged. The plaintiff was then told "to keep it clear." No other specific direction was given at any time. The clogging was in the iron rolls which conducted the straw to the knives, and not in the knives themselves. But it was claimed for the plaintiff that he understood that the straw was clogged in the knives. Sometime afterwards, while he was away emptying his baskets, straw accumulated on the floor, when he returned he put this into one basket, and then took the other basket, and placing it before him, stood in front of the spout, and caught the straw as it came down, to use his own expression, "combed it right down into the basket with both hands, dog paddle style." While he was doing this, the machine clogged again. He noticed that the machine was shaking, and, as he says, "he went to pull the straw away," and got his fingers into the knives. The plaintiff complains of want of proper instructions, and the defendant, among other things says the plaintiff was guilty of contributory negligence.

*Held:* 1. That though the plaintiff was loaned to the defendant by his own employer, the defendant owed to him the duties which a master owes to a servant.

2. That in giving, or failing to give, warning of hidden dangers, Wood was not a fellow servant of the plaintiff, but was a vice-principal and as such represented the master.

3. That the defendant was not bound to give the plaintiff warning of all possible, concealed, or unknown, dangers incident to the use of the machine, but only of such as might expose him to injury in the course of his employment, that is to say, while doing his work in the way he was told to do it, if told at all, or, if not told, in any way in which he might reasonably be expected to do it, taking into account his age, intelligence and experience.

4. That the plaintiff was guilty of contributory negligence.

On exceptions and motion by defendant. Exceptions not considered. Motion sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant's vice-principal. Plea, the general issue. Verdict for plaintiff for $2166.63. The defendant excepted to certain rulings during the trial and also filed a general motion for a new trial.

The case is stated in the opinion.

*Guy A. Hildreth,* for plaintiff.

*O. B. Clason* and *Geo. W. Heselton,* for defendant.

SITTING: WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J.   Action on the case for personal injuries alleged to have been caused by the negligence of the defendant's vice-principal, for which the defendant is claimed to be responsible.   The plaintiff recovered a verdict, and the case comes up on defendant's exceptions and motion for a new trial.   We will consider the questions arising under the motion.

It appears that the defendant resides in New York, but owns a farm in Litchfield, which he visits several times a year.   In 1906, there was living on the farm one Wood and his wife.   Wood was employed by the defendant to take care of the stock and do whatever was necessary about the buildings, and to work on the farm whenever he could.   In the defendant's absence, he had charge of the farm, but, as the defendant claims, under his specific directions.

In May, 1906, the plaintiff, then sixteen years old, was employed by one Frank Berry, a neighbor, and a relative of the defendant. Frank Berry, by arrangement with the defendant, was accustomed to work at times on the defendant's farm.   Wood and Frank Berry were in the habit of "changing works,"—Wood working for Berry, and at other times Berry working for Wood.   But whether the defendant had knowledge of, and consented to, this practice is in dispute.   For several days in the early part of May, Frank Berry took the plaintiff with him to work on the defendant's farm, doing work which he had agreed with the defendant to do.   May 11, Wood asked Frank Berry to let him have the plaintiff to work for him that day, and Berry consented.   According to this arrangement, the plaintiff went to the defendant's farm and worked with Wood.   Though working for Wood, the plaintiff remained the servant of Berry.   Berry merely loaned him to Wood.   After doing other things, Wood and the plaintiff undertook to cut up some straw for bedding.   For this purpose, they used a feed cutter, the power for which was supplied by a seven horse power gasolene engine. Wood fed the straw into the machine, where it was cut by knives affixed to a shaft revolving at a speed of about 900 revolutions a minute.   The plaintiff was directed to remove the chopped straw

after it left the machine, and carry it in a basket or baskets, about twenty feet, and put it in a pile in the tie-up. The chopped straw, as it came from the spout, so called, of the feed cutter, either fell on the floor, or, if the plaintiff was there with his basket, into the basket. Around the spout was a projection,—a rim or flange,—and from the outer edge of this flange, at the top, in to the revolving knives, was a distance of from three and a half to four inches. The spout was eleven inches wide, and about sixteen inches from top to bottom, and the top of it was about thirty inches from the floor. The knives were covered by a hood, and were not visible to the plaintiff, either standing erect, or in any position he would naturally assume in removing the bedding. The plaintiff had never worked about a feed cutter before, and was not acquainted with its mechanism. The hood was not removed while he was present, and he did not know the exact position of the knives. But he undoubtedly knew that knives, or some cutting apparatus, was within the machine. While engaged in removing the bedding, the plaintiff put his right hand into the spout, under the flange far enough so that four fingers and a part of the thumb were cut off.

The defendant contends, in the first place, that Wood had no authority to hire the plaintiff from Frank Berry, that Wood was an agent with expressly limited powers and duties; that he had no duties to perform which required the assistance of others, and from which a power to hire could be implied, except in the use of the feed cutter; and that for this service, the defendant had already provided other men. In short, the defendant claims that Wood was merely a farm servant, acting at all times under specific directions. The plaintiff, on the other hand, says that Wood was a vice-principal, that he had authority to "change works" with Berry, or at least that he had authority or was held out by the defendant as having authority, to hire a man to do such work as the plaintiff was employed by him to do.

We will not undertake to analyze, or give a synopsis of, the voluminous evidence on this much contested point. It is enough to say that if the defendant's contention rested upon this point alone, we should not disturb the verdict.

We assume, then, that the plaintiff was properly hired by Wood of Frank Berry to do the defendant's work. And though the plaintiff was technically still a servant of Frank Berry, yet having been put by Berry to work for the defendant, by authority of the defendant, he became, as to that work, the servant of the defendant, and the defendant owed to him the duties which a master owes to a servant. This proposition is not denied, nor can it be successfully. *Coughlan* v. *Cambridge,* 166 Mass. 268; *Clapp* v. *Kemp,* 122 Mass. 481.

The plaintiff claims that the defendant failed to perform the duties he owed to him, in two respects. First, that the machine as it was being used was unsafe, in that it was being used without an elevator, and secondly, that the defendant did not instruct him with regard to the machine, and did not warn him of the dangers attendant upon its use. As to the first proposition, only a word need be said. The machine was so constructed that an elevator could be used with it to carry away matter after it was cut. Such an elevator would presumably be useful when ensilage was being cut up. But the defendant was under no obligation to use the elevator. He might adopt any other means he saw fit for taking away the cut up matter. How an elevator could have been of service on the occasion in question is not apparent.

If, however, there were any risks incident to the use of the machine as it was, which were not known by the plaintiff, or which were not obvious to nor appreciable by him, especially considering his youth and inexperience, and which would expose him to danger in the course of his employment, it was the defendant's duty to warn him of them, and give him appropriate instructions so as to secure his safety. *Campbell* v. *Eveleth,* 83 Maine, 50; *Wormell* v. *M. C. R. R. Co.,* 79 Maine, 397; *Welch* v. *Bath Iron Works,* 98 Maine, 361; *Erickson* v. *Monson Consolidated Slate Co.,* 100 Maine, 107. And this duty the defendant could not delegate to another so as to escape responsibility. *Welch* v. *Bath Iron Works,* supra; *Donnelly* v. *Granite Co.,* 90 Maine, 110. In giving, or failing to give, warning of hidden dangers, Wood was not a fellow servant of the plaintiff. In this particular he represented the

master.   As to the duty of giving instructions, he was a vice-prin-
cipal.   The test of vice-principalship is not the relative grade of the
servants employed, but the nature of the duty to be performed.
*Small* v. *Allington*, etc., *Mfg. Co.*, 94 Maine, 551.   Therefore the
defendant is to be held responsible for any failure of Wood to give
the plaintiff requisite instructions.

But in this connection it should be said that the defendant was
not bound to give the plaintiff warning of all possible, concealed,
or unknown, dangers incident to the use of the machine, but only
of such as might expose him to injury in the course of his employ-
ment, that is to say, while doing his work in the way he was told
to do it, if told at all, or if not told, in any way in which he
might reasonably be expected to do it, taking into account his age,
intelligence and experience.

According to the version of the facts as given by the plaintiff,
he was told in the beginning to take the straw away from the
machine,—"the straw that piled up."   Very soon the machine
clogged once, as it seems it was apt to do, if a large or untangled
"wad" of straw was fed into it.   It is conceded that the clogging
was in the iron rolls which conducted the straw to the knives, and
not in the knives themselves.   But it is claimed for the plaintiff
that he understood that the straw was clogged in the knives.   He
says that at the time of this clogging Wood told him "to keep it
clear."   He testifies to no other or further direction by Wood.
Sometime afterwards he emptied his baskets, and when he came
back a pile of straw had accumulated on the floor.   He put this
into one basket, and in so doing he cleaned up nearly all that was
on the floor.   He then took the other basket, and placing it before
him, stood in front of the spout and caught the straw as it came
down,—to use his expression,—"combed it right down into the
basket with both hands, dog paddle style."   While he was doing
this, the machine clogged again.   He noticed that it was shaking,
and he "went to pull the straw away," and got his fingers into the
knives.

It may well be doubted whether, in view of the character of the
work to which the plaintiff was assigned, there was any duty on

the part of the defendant or Wood, to instruct the plaintiff in regard to the danger of being cut by the knives. As we have seen, the defendant was not bound to give warning of a danger that was not reasonably to be anticipated. There was nothing, it seems to us, in the general directions, "to take the straw away," "to keep it clear," which made it the duty of the plaintiff, or which should have made it seem to him as his duty, to put his hands under the hood to pull the straw away from the knives. If this be so, the defendant was not in fault for not giving warning about the knives. But the plaintiff contends that, under the circumstances, the direction, "keep it clear," given at a time when the machine clogged, would naturally and reasonably give a person of his age and inexperience to understand that he was expected to get the straw away from the point where he supposed the straw clogged, namely, under the hood, where it seems the knives were, though unknown to him as he claims. If this be so, or, if Wood saw that the plaintiff was taking the straw away in an improper and dangerous manner as the jury may have found, then he should have warned the plaintiff of the danger. He should have considered the age of the plaintiff, his lack of experience, and the fact that the knives were concealed from view, and instructed him to keep his hands away from the knives.

It is, however, unnecessary to determine whether the plaintiff's propositions of fact are sustainable, for it is clear that the defendant's last contention, namely, that the contributory negligence of the plaintiff contributed to his injury, must be sustained.

The plaintiff was bound to show not only the defendant's negligence, but affirmatively that no want of due care on his own part contributed to the injury. *Colomb* v. *P. & B. St. Ry.*, 100 Maine, 418. And on this point we state the situation as it is stated by the plaintiff's counsel in argument. It is claimed by him that the cause of the clogging of the machine was irregular feeding by Wood; that the straw choked in the rolls before it got to the knives, and but little then came out of the spout; that the plaintiff, in his ignorance and inexperience, thought the reason more straw did not come out of the spout was because it was choked in the spout, and

remembering the order of Wood, "to keep it clear," put his hands into the spout "to keep it clear," and thus was injured.

Assuming all this to be true, we cannot resist the conclusion that it was gross carelessness,—a piece of foolhardiness,—even for a person of his age, to put his hands out of sight under the hood, into a place where he knew that knives or some other appliances were cutting the straw. His testimony shows that he is a young man of a good degree of intelligence, and he must have known, if he used that intelligence, that he could not remove the straw from the cutting apparatus, whatever it was, without the liability of getting his hands into dangerous proximity to the apparatus itself. The knives were beyond his sight. He did not know where they were. And this made it all the more careless for him to do what he did. Though the age and intelligence of a party are always important factors in determining whether due care has been used, yet the plaintiff was bound to use that degree or extent of care which ordinarily prudent persons of his age and intelligence are accustomed to use under like circumstances. *Colomb* v. *P. & B. St. Ry.*, supra. Measuring the plaintiff's conduct by this standard, we think it must be held to be careless. If the plaintiff himself had been asked, before the accident, if it would be safe to put hands, with the machine in operation, in the place where he afterwards put his, we think it hardly admits of a doubt that he would have answered, "No."·

It is unnecessary to consider the exceptions.

*Motion sustained.*
*New trial granted.*