PERLE E. DUNBAR *vs.* HOLLINGSWORTH & WHITNEY COMPANY.

Somerset.   Opinion November 12, 1912.

*Appliances.  Appreciates the danger.  Cross Arms.  Contributory Negligence.*
*Danger.   Due  Care.    Electric  Shock.    Failure  to  Instruct.*
*Motion.   Negligence.   "Safe  place  to  work  rule."*

The defendant was preparing to erect a derrick.  Its servants passed a loose
guy wire over a highly charged electric wire belonging to another com-
pany.   In the process, the guy wire wore off the insulation of the electric
wire.   The plaintiff, a servant of the defendant, was directed to repair the
damaged wire by winding tape around the abraded spot.   He climbed the
pole and put his leg over the cross arm of the pole in such a way that it
rested on the guy wire.   One end of the guy wire was grounded.   In this
position, while winding the electric wire he received an electric shock
which did him serious injury.   In a suit to recover damages therefor,
based upon the alleged negligence of the defendant in failing to furnish
him a safe place to work, and to instruct him as to the danger, it is *held:*

1.  If a workman who is set to work in a dangerous place knows and appre-
ciates the danger, or if by the exercise of reasonable care he would have
known and appreciated it, he is held to have assumed the risk of the
danger.

2.  If a workman who is set to work in a dangerous place knows and appre-
ciates the danger, or if by the exercise of reasonable care he would have
done so, the employer is not legally at fault if he fails to instruct him as
to the danger.

3.  The duty of the master to give his servant warning of danger is not
absolute.   He is held only to the exercise of reasonable care in this respect.

4.  The evidence that the plaintiff both knew and appreciated the danger
complained of in this case is so strong and compelling that it must be
considered that the verdict of the jury in his favor was the result of mis-
apprehension of the rules of law, or the product of passion or prejudice.

On motion for new trial by defendant.   Motion sustained.

This is an action on the case for alleged negligence of the defend-
ant, a master, whereby the plaintiff, a servant, was injured.   Plea,

the general issue.  The jury rendered a verdict for the plaintiff for $4395.83, and the defendant filed a general motion for a new trial.

*Pattangall & Plumstead, W. B. Brown, and Merrill & Merrill,* for plaintiff.

*Johnson & Perkins, and Butler & Butler,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

SAVAGE, J.  Action on the case for alleged negligence of the defendant, a master, whereby the plaintiff, a servant, was injured. The plaintiff recovered a verdict for $4395.83.  The case comes here on the defendant's motion for a new trial.

Most of the facts are not in dispute.  The defendant was building a pulp mill at Madison.  In the process of construction it became expedient to set up a derrick near the pole line of the Madison Electric Works.  Two of the wires on this pole line were high voltage wires carrying 2200 volts of electricity.  For the purpose of staying the derrick mast when erected, the defendant's servants were pulling a guy wire over and diagonally across the electric wires, within a few inches of an electric light pole, and across the cross arm.  One end of the guy wire was intended to be attached to the mast, and the other to a "dead man" in the ground on the other side of the pole line.  When completed, the guy wire would be above the electric wires and clear them.  But while being pulled over, the guy wire was in contact with the electric wires, and wore off the insulation, so that the guy wire touched the metal of one of the electric wires.  The men who were handling the guy wire received electric shocks.  One of the men caused the guy wire to be lifted from the bare electric wire and moved a few inches to where the insulation remained intact.  There it was found the next morning. One end, at least, of the guy wire was on the ground.  On the following morning the plaintiff was directed to fix the damaged wire. He undertook to do so.  The necessary repairs consisted in winding tape around the abraded spot on the wire.  He put on his climbers and climbed the pole.  He put his right leg over the cross arm, in such a way that it rested on the guy wire.  His left foot rested on the cross arm brace.  He then reached out with his left hand to wind the wire.  Being in contact with the "grounded guy wire, it

was only necessary for him to touch the electric wire, when his body would complete the circuit, and the electricity would escape from the electric wire and pass through him and the guy wire to the ground. And that was what undoubtedly did happen. One witness, indeed, testified that he saw one workman pick up the guy wire on the ground that morning, and drop it as if shocked. This would indicate that the guy wire was then in contact with the bare spot in the electric wire. But this is contradicted by all the other evidence in the case. That occurrence doubtless took place the day before when they were pulling the guy over the wire, as was described by another witness. While the plaintiff was passing the tape around the wire, he received an electric shock. He says he does not know just how it happened. He says, the guy wire was resting, not on the bare spot, but on the insulated portion of the electric wire. If so, the electric current did not pass from the electric wire to the guy wire through a direct contact of the two wires. The guy wire itself was not charged before the plaintiff began work. It could be charged only by being connected with an uninsulated part of the live electric wire. The plaintiff received no shock when he put his leg on the guy wire. There was no way for him to get a shock until, with his leg over the grounded guy, he touched a live wire with some other part of his body. His physician testified that he had two burns, one on the thumb and first finger of his left hand, and the other on the back side of his right leg, a little above the knee. His position as we have described it perfectly accounts for these burns. As a result of the injury, the plaintiff's thumb and finger on the left hand were amputated.

The plaintiff in his writ charges the defendant with negligence in two particulars, namely, a failure to furnish him with a reasonably safe and suitable place to work, and a failure either to inform him that the guy was charged with electricity, and that its condition was therefore dangerous, or to shut off the current. The defendant denies negligence on its own part, and contends that the plaintiff was guilty of contributory negligence.

It will be noticed that the theory of the writ is that the guy wire was charged with electricity, and that the plaintiff received his injury through coming in contact with it. But that we think is clearly a misconception. There is no evidence that the guy wire was in

contact with any uninsulated portion of the electric wire. As already stated, the plaintiff himself asserts that it was resting on an insulated portion. There was no way for it to become charged, until the plaintiff's body completed the circuit with the electric wire. We have already stated our conviction, that while the plaintiff's leg was in contact with the guy wire lying over the cross-arm, his hand came in contact with the electric wire, and thus completed the circuit. But the misconception in the writ is amendable, and we do not deem it material, after verdict.

So far as the "safe place to work" rule is concerned, it need only be said that it is not applicable to the situation in this case. That danger was lurking in the charged electric wires is true. Yet the place, to one who knew and appreciated the danger, and used the degree of care which was requisite to the situation, that is to say, due care under the existing circumstances, was "safe," as the word is used in the master-and-servant rule. Besides, but for the guy wire, the witnesses all agree that the plaintiff's work was not dangerous. The pole which the plaintiff climbed was dry. Dry wood is practically a non-conductor of electricity. The plaintiff might have rested upon the cross-arm or upon the pole, and touched the live wire without harm, unless he was in contact with some conductor. The guy wire was a conductor. It was the presence of the guy wire which created the danger. But work has to be done at times in dangerous places. If the workman knows and appreciates the danger, or if by the exercise of reasonable care, he would have known and appreciated it, he is held to have assumed the risk of danger. *Caven* v. *Granite Co.,* 99 Maine, 285. And this rule has especial force in a case where the dangerous risk lies in the voluntary movements of the workman himself, movements which he can control and for which he is responsible. When the place to work is itself dangerous, the master is absolved from liability, if the workman knew and appreciated the danger, or should have done so. And this leads to a consideration of the other alleged ground of negligence, the failure to instruct the plaintiff as to the danger.

If the servant knows and appreciates the danger, instruction is not necessary. If the servant does not know and appreciate the danger, and would not have known it by the exercise of due care,

as, if the danger is not obvious, and the servant is inexperienced, it is the duty of the master to give him suitable warning of the danger. But in this respect the duty is not absolute. As in the case of furnishing safe and suitable appliances, or a safe place to work, the master is bound to use due care. He is held to no more. Negligence, or want of due care, is the basis of the action. If he used due care, he does all that the law requires. *Cowett* v. *American Woolen Company,* 97 Maine, 543. The care of the master must be equal to the emergency, and must be determined by the conduct of ordinarily prudent men, under like circumstances. *Snowdale* v. *United Box, Board and Paper Co.,* 100 Maine, 300. But this need not be considered further, for we think that the case clearly shows that the plaintiff knew and appreciated the danger, and hence that instructions were not necessary. He was a mature and intelligent mechanic. In this age of the world, it is not unreasonable to impute to intelligent men some knowledge that contact with wires carrying a voltage of 2200 volts is, or is likely to be, dangerous. For such a man to say otherwise is unbelieveable. Besides, the plaintiff, though not an electrician, was in charge of a carpenter's crew in which were two electricians, and for many months all the electrical work done in the construction of the mill, both in placing and repairing wires, was done by his electricians, under his supervision and direction, so that the necessity of so placing wires as to avoid connecting, or "short circuiting," must have been somewhat familiar to him. Further, if the testimony of one of the plaintiff's own witnesses as to statements made by the plaintiff at the time he received the order to fix the wire is true, and it is corroborated, there can be no doubt that he appreciated the danger. The plaintiff indeed denies having made the statements, and it is true that the witness afterwards shaded off his testimony down to a contradiction of himself. His shading off creates a painful impression as it is read; and in view of the signed statement made by him on the day of the accident, when the matter was fresh in his memory, we are led to think that the entire shading off might be disregarded without doing violence to the truth. But we do not rest our conclusion on this feature. The incident is merely a feature, that is all. There was, besides, the uncontradicted testimony of two apparently reputable witnesses called by the defendant

of statements made at different times by the plaintiff, when inquired of, as to why he did not shut off the current by pulling certain plugs before he attempted to do the work. ·If he made these statements, the conclusion is almost irresistible that he appreciated the danger, for the statement is that he said he did. One of these witnesses says that he said he knew it was foolish to go up on the pole without drawing the plugs. That he made the statements we must believe, at least until the testimony is contradicted. His explanation of his neglect to shut off the current was, not that he did not know that the current was on, not that he did not know how to shut it off, not that he did not know it would be dangerous to let it stay on, but to use his words, "I would have got the devil if I had shut off the juice."

It is the opinion of the court that the evidence that the plaintiff both knew and appreciated the danger is so strong and compelling that it must be considered that the verdict of the jury, which is in effect to the contrary, was the result of misapprehension of the rules of law, or the product of passion or prejudice.

*Motion for a new trial sustained.*