JOHN E. MERRILL
*vs.*
IVAN WALLINGFORD

Cumberland.    Opinion, January 27, 1959.

*Richard Harvey,*
*Herbert H. Bennett,* for plaintiff

*Paul A. Choate,*
*Frank W. Linnell,* for defendant

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
DUBORD, SIDDALL, JJ.

SULLIVAN, J.    This is a common law action of tort insti-
tuted by the plaintiff to retrieve his damages for personal

injuries and their consequences, sustained by him whilst working as a mechanic for the defendant. The Workmen's Compensation Act does not apply since the defendant has but two employees. R. S. (1954), c. 31, § 4; P. L., 1957, c. 343.

At the close of the plaintiff's evidence the defendant moved for a directed verdict. The motion was denied. Defendant excepted to such a ruling and now prosecutes his exceptions.

The plaintiff had complained that the defendant without heed to his duty had negligently failed to afford the plaintiff safe means or place for the performance of the plaintiff's work and that as a result the plaintiff without fault on his part had become severely injured in his person. The defendant pleaded a general denial, the contributory negligence of the plaintiff and the assumption of risk by the plaintiff.

The record is before us and upon the paramount issue of this case the basic principle has been plainly and often stated by this court, e. g.:

> "We view the evidence in the light most favorable to the plaintiff to determine whether the matter was properly submitted to the jury to determine controverted facts and to draw any reasonable and legal inferences therefrom. Greene, Admr. v. Willey, 147 Me. 227. A verdict is properly directed for a defendant when the evidence tending to support a verdict for the plaintiff is not such as reasonable minds are warranted in believing, as when it is incredible, or unreasonable, or inconsistent with the proved circumstances of the case, or when the evidence contrary to the plaintiff's position is so overweighing and so overwhelming as to make it appear that the jury could not reasonably and rationally find a verdict in favor of the plaintiff. Garmong v. Henderson, 114 Me. 75. In such cases prevention by direction of the verdict is better

than the cure. Sylvia v. Etscovitz, 135 Me. 80; Weed v. Clark, 118 Me. 466."

*Jordan* v. *Portland Coach Co.* (1954), 150 Me. 149, 150.

We now review the evidence in this case in the light most favorable to the plaintiff.

The defendant was engaged in the business of dealing in farm machinery and of operating a bulldozer and rototiller. The plaintiff served him in part as a repair man and had done so for two months. For the conduct of his business the defendant rented a building 20 feet by 30 feet from his father who was a commercial orchardist. Yet the father simultaneously cooccupied the building with his own equipment and employees and for the furtherance of his own calling. The testimony fails to acquaint us with additional knowledge of the precise legal relation of son with father in regard to the building save to disclose that the defendant did not enjoy exclusive control.

The ground floor afforded a repair shop for son and father. Along one wall ranged a work bench with a vise, power drills and a tool box upon it. There was a quantity of metal in a rack and more on the cement floor. Various types of farm machinery were about as well as a mobile acetylene burning apparatus with tanks, hose and nozzle.

The plaintiff had had a very considerable experience with acetylene torches. On the morning of the accident the defendant assigned the plaintiff to the duty of fabricating a metal bumper and attaching it to a large Case tractor of the defendant which was resting on end on the floor. The defendant then left the shop in accordance with his intermittent practice.

At the same time the father of the defendant possessed a tractor which was stationed upon the floor only a few feet from the defendant's tractor which the plaintiff was re-

pairing. For two days to the knowledge of the plaintiff an employee of the father of the defendant had been removing the paint from the father's tractor by a sanding process and had been readying the vehicle for fresh coating. The father's employee and the plaintiff were alone in the shop. The former went outside to his automobile and fetched a brilliantly red can of paint thinner of one gallon dimension, one foot in height and topped with a screw cap. He set the object on the shop floor between the two tractors and near a drawer containing paint screens and sticks used for mixing purposes. The can was located about two feet from the bench, within three feet of the area where the plaintiff was working and some fifteen feet from the defendant's tractor. The employee of the defendant's father was thereupon attracted to a door of the garage in an opposite side of the building by a man seeking to negotiate some business with the defendant's father. The employee's back was to the plaintiff. The plaintiff placed or had placed a piece of steel in the vise at the bench and proceeded to cut the steel with the acetylene torch. Shortly there was an explosion and the employee of the defendant's father turned about to discover the plaintiff afire and the shop ablaze with high flames billowing above a puddle of liquid on the floor. The contents of the red can had obviously exploded and the bottom of the can which was otherwise intact had cleanly blown away as if parted at the seams by expansive pressure. The plaintiff was grievously injured.

The plaintiff had not observed the can nor had he exerted any pains to notice its close presence or position. The deduction is compelling that glowing particles from the steel under the impact of the torch's flame had cascaded to the floor and expanded gases in the can which yielded and burst at the weakest part.

The testimony personifies the plaintiff as a matured adult with several years of mechanical schooling and experience.

He was sufficiently familiar with the operation of an acetylene torch. Painting had been performed in the shop at three or four times during the plaintiff's two months' employment there and at the time of the unfortunate accident the plaintiff was aware that during two days preparatory disposition for the painting of the other tractor had been advanced and that the application of the paint was imminent. The thinner was a conventional ingredient in such painting and the conspicuous can was located where the plaintiff had only to look to see it before he projected the molten steel fragments. The defendant had no knowledge of the presence or of the situation of the can of paint thinner in the shop.

In the instant case this plaintiff has a primordial obligation of establishing the negligence of the defendant.

> "The action set forth is founded upon the charge of negligence. It is the gist of the action. To entitle the plaintiff to recover, he must prove such negligence, the omission of some duty, or the commission of such negligent acts on the part of the defendant as occasioned the injury to the plaintiff." *Wormell* v. *Railroad Co.*, 79 Me. 397, 403.

We find no evidence or proof to demonstrate that any tools or apparatus furnished the plaintiff by the defendant were deficient or unsafe. The shop of employment was not exceptional. It conformed much to the type dedicated to the repair and restoration of heavy farm or road machinery. We are informed of no hidden dangers concerning which the defendant should have advised the plaintiff. As a hazard the lodged can and its contents were obvious and outstanding. *Melanson* v. *Reed Bros.*, 146 Me. 16, 19.

> "- - - The obligation resting upon the employer to give the laborer such instructions as are reasonably necessary to enable him to understand the perils to which he is exposed, must be considered with reference to the reciprocal obligation resting

upon the laborer to exercise the senses and faculties with which he has been endowed in order to discover and comprehend these perils for himself. He is not bound to inform the laborer of what he already knows, or what by the exercise of ordinary care and attention, he might have known."

*Cunningham* v. *Iron Works*, 92 Me. 501, 510.

"- - - Though he (the servant) may have the benefit of the presumption that his master has performed its duties, yet he is bound to use his eyes and his mind, and to see the things before him which are obvious - - - -"

*Lebrecque* v. *Hill Mfg. Co.*, 104 Me. 380, 386.

"- - - The danger was obvious. There is no duty to warn or instruct a competent and experienced employee as to obvious dangers connected with his work - - - -"

*Morey* v. *Railroad Company*, 125 Me. 272, 282.

The plaintiff in pursuance of his accustomed work was operating an acetylene torch at the time of his misfortune. The apparatus was not dangerous per se but its potency and capability of releasing volatile and molten steel in a small enclosure where painting was in preparation or progress would seem to render the operator accountable for ordinary circumspection in advance of operation. The plaintiff was familiar with his workaday surroundings. At the time of the accident he was cognizant of what was expected of him in respect to the task to be done. He was acquainted with what the employee of the defendant's father was in the course of doing and purposed to do. The plaintiff had assumed the risk of the danger which then energized eventuated in severe injuries to him.

"Every employer has the right to judge for himself in what manner he will carry on his business, as between himself and those whom he employs, and the servant having knowledge of the circum-

stances, must judge for himself whether he will enter his service, or, having entered, whether he will remain. - - - Buzzell v. Laconia M'f'g Co. 48 Maine, 121; Shanny v. Androscoggin Mills, 66 Maine 427; - - -"

*Wormell* v. *Railroad Co.,* 79 Me. 397, 405.

"Plaintiff assumed the obvious risk of that happening which did happen and which any reasonably intelligent person would know must happen if the work was carried on as plaintiff carried it on."

*Blacker* v. *Oxford Paper Co.,* 127 Me. 228, 231.

- - - But work has to be done at times in dangerous places. If the workman knows and appreciates the danger, or if by the exercise of reasonable care, he would have known and appreciated it, he is held to have assumed the risk of danger. Caven v. Granite Co., 99 Maine, 285. And this rule has especial force in a case where the dangerous risk lies in the voluntary movements of the workman himself, movements which he can control and for which he is responsible. When the place to work is itself dangerous, the master is absolved from liability, if the workman knew and appreciated the danger, or should have done so - - -"

*Dunbar* v. *Hollingsworth & Whitney Co.,* 109 Me. 461, 464.

"The conventional statement of the rule in America today is that the servant 'assumes (1) such dangers as are ordinarily and normally incident to the work, and a workman of mature years is presumed to know them whether he does or not; (2) such extraordinary and abnormal risks as he (a) knows and appreciates and faces without complaint or (b) are obvious and apparent.' "

*Harper and James, The Law of Torts,* Vol. 2, § 21.4, P. 1178.

The facts of this case do not justify the jury verdict and this court accordingly finds the verdict clearly wrong. Justice requires that it be set aside.

The mandate must be:

*Exceptions sustained.*