Richard HURD

v.

Daniel HURD, Sr. and Clark Equipment Company.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1980.
Decided Jan. 2, 1981.

Jerome S. Goldsmith (orally), Michael L. Rair, Law Student, Bangor, for plaintiff.

Rudman, Winchell, Carter & Buckley, Clark P. Thompson (orally), Michael P. Friedman, Bangor, for Clark Equipment Co.

Vafiades, Brountas & Kominsky, Eugene Coughlin, Bangor (orally), for Daniel Hurd.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, and GLASSMAN, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

In this negligence and breach of warranty action plaintiff Richard Hurd appeals from the dismissal by the Superior Court (Penobscot County), after trial without a jury, of his claims against his father and employer, Daniel Hurd, Sr. (defendant Hurd), and the manufacturer, Clark Equipment Company (defendant Clark), that arose out of a 1971 farm accident involving a front-end loader. We affirm the judgment entered for both defendants.

Beginning in 1966, plaintiff worked as a laborer on his father's cattle and dairy farm in Bradford. At the time of the accident in 1971, plaintiff was 27 years old. Earlier in 1971, plaintiff's father, defendant Hurd, purchased a used Michigan 55A front-end loader from a construction company in either Augusta or Hallowell. The loader had been manufactured by defendant Clark in 1960 and had had several intermediate owners. On November 20, 1971, defendant Hurd told plaintiff and two other employees to use the loader to move a hay conveyor that had been blown over by the wind. Plaintiff had operated the front-end loader on several occasions previously. Defendant Hurd did not further instruct plaintiff on how the conveyor should be moved, nor was he present at the worksite. Once there, the other two employees attached the conveyor to the loader's bucket with a chain, and plaintiff, who was operating the loader, raised the conveyor off the ground by lifting the bucket to its highest position. At that point, plaintiff left the loader's cab to assist the men on the ground. Since the bucket was still in its highest position, plaintiff, in order both to descend from and to remount the machine, had to move under the boom arms that attached the bucket to the loader's body behind the cab. After assisting his companions on the ground, plaintiff mounted the loader from the right side, where the lever that controlled the boom arms was located. As he was getting back into the cab, he brushed against the lever, causing the boom arms to come down rapidly with great force. Plaintiff was crushed by the right boom arm and his back was broken.

In his suit jointly against the father-employer and the loader's manufacturer, plaintiff claimed his father, defendant Hurd, was negligent both in furnishing him an unsafe place to work and in failing to warn him of the hazard involved in operating the loader.[1] Plaintiff claimed that the manufacturer, defendant Clark, had committed a breach of the warranties of the loader's merchantability and fitness for its intended purpose, and was negligent in failing to design the loader in such a way as to prevent the unintended activation of the boom arms and in failing to warn the loader's users of the dangers inherent in using it as it was constructed. At the conclusion of plaintiff's case, the Superior Court justice in a bench ruling dismissed plaintiff's negligence claim against his father. He subsequently issued a written opinion also dismissing plaintiff's claims against the manufacturer, basing dismissal of the warranty claim on lack of privity and dismissal of the negligence claim on a finding that defendant Clark had not violated any duty of care in designing the loader or in failing to warn of its dangers.

## I. THE CLAIMS AGAINST THE FATHER–EMPLOYER

The case at bar involves an issue of first impression for this court, namely, the effect of the comparative negligence

---

1. The complaint does not expressly allege a claim based on the father's negligent failure to warn, but the court below in reaching its determination, as well as the parties themselves both at trial and on appeal, have proceeded as if that issue had been raised, and we therefore will treat it in the same manner. *See* M.R. Civ.P. 15(b); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.5 (2d ed. 1970).

statute, 14 M.R.S.A. § 156,[2] on an employer's common law duties to his employees.[3] The case law developed prior to the 1965 enactment of that statute distinctly defines at least two such common law duties. The employer must first furnish his employees with a reasonably safe workplace. *Boober v. Bicknell*, 135 Me. 153, 154, 191 A. 275, 275–76 (1937); *Kimball v. Clark*, 133 Me. 263, 266, 177 A. 183, 184 (1935). In addition, he must warn the employees of any hidden dangers involved in the work to be done. *Kimball v. Clark, supra* at 266, 177 A. at 184; *Dunbar v. Hollingsworth & Whitney Co.*, 109 Me. 461, 464–65, 84 A. 992, 994 (1912). In cases brought by employees injured by instrumentalities containing an obvious danger, this court in the past has articulated two theories for denying recovery: first, that the employer was under no duty to warn his employees of an obvious danger; and second, that the employee had assumed the risk or had been contributorily negligent in unreasonably failing to perceive or to respond to the obvious danger. *Merrill v. Wallingford*, 154 Me. 345, 349–51, 148 A.2d 97, 100–01 (1959); *Dunbar v. Hollingsworth & Whitney Co., supra* at 464–66, 84 A. at 994–95; *Wyman v. Berry*, 106 Me. 43, 48–50, 75 A. 123, 126 (1909); *Podvin v. Pepperell Mfg. Co.*, 104 Me. 561, 564–66, 72 A. 618, 620 (1908); *Bryant v. Great Northern Paper Co.*, 100 Me. 171, 174, 60 A. 797, 798 (1905). Under the law in force in Maine until 1965, the employee on either theory was completely barred from any recovery.

■ The enactment of 14 M.R.S.A. § 156 in 1965 changed the manner in which the trier of fact should analyze, on those infrequent occasions when it arises, the problem of whether an injured employee may recover from his employer on a common law negligence theory in instances in which the

danger that caused the employee's injury was or should have been obvious to him. Rather than equating the employee's failure to avoid an obvious danger with a total lack of duty on the employer's part, the factfinder should first determine independently whether the employer has violated either his duty to provide a reasonably safe workplace or his duty to instruct the employee on risks inherent in the nature of the work. If the employer has been negligent in either or both respects, the focus of the inquiry then shifts to the employee's duty to refrain from negligent conduct. If the factfinder determines that the employee's own negligence was equal to or greater than the employer's, the employee will be barred from recovery. *See Wing v. Morse*, Me., 300 A.2d 491, 501 (1973). Whether the danger that resulted in the injury was obvious will, of course, be a factor to be considered in determining the employee's negligence. *See Ferguson v. Bretton*, Me., 375 A.2d 225, 227 (1977). However, the plaintiff's awareness of the danger that caused his injury will no longer by itself constitute an absolute bar to recovery. *Id.*

We now examine whether the trial justice in the case at bar committed reversible error in dismissing the employee's suit against his father-employer. The justice granted that defendant's motion to dismiss at the close of plaintiff's case. With direct relevance to that circumstance, M.R.Civ.P. 41(b)(2) provides that:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff. . . .

2. 14 M.R.S.A. § 156 (1980) was enacted by P.L. 1965, ch. 424.

3. Under the law prevailing in 1971, when plaintiff was injured, claims by employees against their employers for injuries occurring in the course of employment were, as they are at present, ordinarily subject to workers' compensation. *See* 39 M.R.S.A. § 51 (Supp.1972). In

this case, however, defendant Hurd as an employer of farm laborers apparently was exempt from the then Workmen's Compensation Act, *see* 39 M.R.S.A. §§ 4, 28 (1965 & Supp.1972), and we will, as did the parties and the trial court, treat plaintiff's claim against his employer in accordance with generally applicable principles of negligence.

Thus, the trial justice in the case at bar was not bound to rule solely on the legal sufficiency of the evidence, as he would have been in a jury case, 1 Field, McKusick & Wroth, *Maine Civil Practice* § 41.7 at 579 (2d ed. 1970), but was entitled to determine on the basis of both the facts and the law whether plaintiff had shown any right to relief.

■ The justice had before him the complaint asserting a breach by the employer of a duty "to furnish the plaintiff with a front end loader free from defects and one which could be used with safety without endangering those using the same." In oral argument immediately before the justice ruled, counsel restated plaintiff's argument that the employer had not provided a safe machine to his son. From the colloquy of counsel and the court and from the justice's oral ruling, it is clear that he determined that plaintiff's negligence in not protecting himself against the obvious dangers of the loader exceeded any negligence on the father-employer's part, whether in failing to provide a reasonably safe workplace or to warn of any danger inherent in the use of the machine. It is true that the justice did not fully spell out his reasoning in terms of the comparative negligence statute; but he had no need to do so. It is clear that he did in fact compare the negligence of the employee with that of the employer. We are not at all willing to assume that the experienced trial justice, having also had his attention specifically called to plaintiff's argument, overlooked the employer's duty to provide a safe place to work. The evidence adequately supports the justice's implicit finding that the employee's total negligence equalled or exceeded the total negligence of the employer. We therefore affirm his dismissal of the suit against defendant Hurd.

## II. THE CLAIMS AGAINST THE MANUFACTURER

The trial justice determined that plaintiff's claims against the manufacturer for breach of warranties of merchantability and fitness for an intended purpose were barred under *McNally v. Nicholson Mfg.*

*Co.*, Me., 313 A.2d 913 (1973), because of the lack of privity between plaintiff and defendant Clark. He also dismissed plaintiff's negligence claim against Clark, concluding that plaintiff simply had not demonstrated any negligence on the part of that defendant. Because neither plaintiff nor defendant Hurd ever had any contractual privity with the manufacturer and for the same reasons relied upon in our disposition of similar claims against a manufacturer in *Burke v. Hamilton Beach Division*, Me., 424 A.2d 145 (1981), decided today, we hold that plaintiff's claims against defendant Clark for breach of warranty and for negligence are both barred by the parties' lack of privity.

### A. *The breach of warranty claim*

■ The front-end loader that is the focus of the present controversy was manufactured and first sold by defendant Clark in 1960. The manufacturer's liability is thus determined by the law of Maine as it existed in 1960. *See LaRue v. National Union Electric Corp.*, 571 F.2d 51, 55 (1st Cir. 1978) (dictum construing Maine law); *McNally v. Nicholson Mfg. Co., supra*, at 927. At that time in Maine, the requirement of privity barred a breach of warranty suit against a defendant with whom the plaintiff had not contracted. *Pelletier v. Dupont*, 124 Me. 269, 276, 128 A. 186, 189 (1925); *see also Sams v. Ezy-Way Foodliner Co.*, 157 Me. 10, 17–18, 170 A.2d 160, 165 (1961). Beginning in 1963, a series of legislative enactments first limited the requirement of "horizontal" privity by permitting suit against a seller of defective goods by a household or family member or a guest of the purchaser, P.L. 1963, ch. 362, § 1, enacting 11 M.R.S.A. § 2–318 (1964); then abrogated the requirement of "vertical" privity by allowing a plaintiff to reach a remote seller, supplier, or manufacturer of defective goods, P.L. 1969, ch. 327, § 1, repealing and replacing 11 M.R.S.A. § 2–318; and finally abrogated the defense of lack of privity as to all breach of warranty and negligence suits, P.L. 1969, ch. 327, § 2, enacting 14 M.R.S.A. § 161. The legislature in each instance expressly declared its in-

tention that these enactments should not be given retrospective effect. *See* P.L. 1963, ch. 362, § 41; P.L. 1969, ch. 327, § 3. Plaintiff's claims are thus not aided by those changes in Maine's law regarding privity, all of which took place after the initial sales transaction by defendant Clark. The trial justice correctly found plaintiff's breach of warranty claims against defendant Clark to be barred by lack of privity between the parties.

### B. *The negligence claim*

As to plaintiff's negligence claim against the manufacturer, we have no occasion to review the trial justice's evidentiary determination that the manufacturer was not negligent. Under the 1960 Maine law applicable to plaintiff's claim, plaintiff's lack of privity with the manufacturer barred him also from recovery for negligence, as it did for breach of warranty.

In Maine in 1960, a plaintiff who was not in privity with a manufacturer was barred not only from asserting a breach of warranty claim against that manufacturer but also, in most instances, from suing him on the ground of negligence as well. *See McNally v. Nicholson Mfg. Co., supra* at 925, *citing Flaherty v. Helfont*, 123 Me. 134, 137, 122 A. 180, 181 (1923). The *Flaherty* case introduced to Maine law the doctrine of *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), which permitted plaintiffs injured by "imminently dangerous" instrumentalities to maintain negligence actions against manufacturers regardless of nonprivity. As this court clearly stated in the *McNally* case, however, *Flaherty* did not amount to an all-encompassing embrace of the *MacPherson* approach, but rather made only a very narrow exception to the privity bar. As *McNally* further makes clear, we have never judicially abrogated the privity requirement with respect to negligence suits, 313 A.2d at 924–25. Finally, as noted above, the post-1960 statutory changes in Maine's privity laws were not retrospective. Our determination of plaintiff's negligence claim against defendant Clark must thus be made under the case law existing in 1960 when the front-end loader by which plaintiff was later injured was sold by the manufacturer. *See generally Burke v. Hamilton Beach Division, supra* at 150.

That case law compels us to hold that plaintiff's negligence claim against defendant Clark is barred by his lack of privity with the manufacturer. Until the 1969 enactment of 14 M.R.S.A. § 161, *supra*, the privity requirement in tort suits remained vital, with only a uniform and narrowly defined exception for products deemed "imminently dangerous" within the meaning of *Flaherty*. *See, e. g., Flaherty v. Helfont, supra* at 137, 122 A. at 181 ("[h]igh explosives, poisons and impure foods are examples"); *Wallace v. Coca-Cola Bottling Plants, Inc.*, Me., 269 A.2d 117 (1970) (contaminated food); *Lajoie v. Bilodeau*, 148 Me. 359, 93 A.2d 719 (1953) (contaminated food); *LaRue v. National Union Electric Corp., supra* (applying pre-1969 Maine law to vacuum cleaner with unguarded high-speed fan). At no time since *Flaherty* have we ever construed that case broadly enough to bring the front-end loader by which plaintiff was injured within the "imminently dangerous" exception to the nonprivity bar. This court's reasoning in *Flaherty*, as adhered to in subsequent cases, leads inescapably to the conclusion that the hazard, which the trial justice found was "obvious," that resulted in plaintiff's injury as he attempted to remount the front-end loader with the boom arms up-raised could not also have been "imminently dangerous." We therefore hold that plaintiff's negligence claim against defendant Clark was barred by the parties' lack of privity. *See also Burke v. Hamilton Beach Division, supra* (privity rule applied to an allegedly defective food mixer manufactured in 1958 and causing injury in 1978).

The entry must be:

Appeal denied.

Judgments affirmed.

WERNICK and NICHOLS, JJ., and DU-FRESNE, A. R. J., concur.

GLASSMAN, J., with whom GODFREY, J., joins, concur in a separate opinion.

GLASSMAN, Justice, with whom GODFREY, Justice, joins, concurring.

I fully concur with the mandate of the Court that the judgments be affirmed in this case. Because of my disagreement with the reasoning in part II(B) of the Court's opinion, I am compelled to write a separate opinion.

At the close of all the evidence, the Superior Court Justice filed a written order for entry of judgment dealing with the claims against the defendant Clark Equipment Co. Referring to the negligence claim against that defendant, the Justice wrote: "The plaintiff has failed to sustain his burden of proving negligent design or failure to warn." That conclusion is fully supported by the evidence, and it is upon that basis that I join in affirming the judgment of the court below as to that issue. The opinion of this Court purports to decide an issue neither presented to nor ruled upon by the Superior Court, namely, whether lack of privity bars the plaintiff's negligence claim. That issue was not presented to this Court by the record below nor was it argued in the briefs filed by the parties. Under such circumstances, I deem it totally inappropriate for this Court to purport to rule upon an issue which is not before it, particularly in light of the uncertainty in our law.

The development of the law of negligence relating to the liability of a manufacturer, seller, or supplier of an allegedly defective chattel has been fully explored too many times to require full development here. It is necessary, however, to sketch that development in very broad outline. In 1842, the Court of Exchequer by way of dictum made a statement which gave rise to the principle that a manufacturer, supplier, or seller of a defective chattel was liable in negligence only to those with whom he was in privity

of contract.[1] Starting with the case of *Thomas v. Winchester*, 6 N.Y. 397 (1852), an exception to this rule developed with regard to articles "imminently" or "inherently" dangerous to human safety. In 1916, Justice Cardozo wrote his famous opinion in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), from which the modern rule developed that the manufacturer, seller, or supplier, without regard to privity of contract, is liable where substantial harm is to be anticipated if a chattel is negligently made or designed and that negligence proximately causes an injury.

Surprisingly, this Court has had little occasion to address this problem. My research discloses no Maine case which squarely holds that lack of privity is a defense to an action based upon negligence against a supplier or manufacturer for injuries caused by a defective chattel.[2] In 1923, this Court decided *Flaherty v. Helfont*, 123 Me. 134, 122 A. 180 (1923). In the course of the opinion by way of dicta, the Court stated:

'The general rule is that no liability attaches for injury to persons who cannot be brought within the scope of the contract.'

But in case of substances or instrumentalities which are imminently dangerous the rule is subject to an exception. *Id.* at 137, 122 A. at 181 (citations omitted).

The basis of the Court's decision, however, was that the allegedly defective condition was not the cause of the accident. In *Estabrook v. Webber Motor Co.*, 137 Me. 20, 15 A.2d 25 (1940), although citing *Flaherty v. Helfont, supra*, the Court ruled that proposed amendments to a declaration were insufficient in that they did not allege the defect with sufficient particularity.

In *Lajoie v. Bilodeau*, 148 Me. 359, 93 A.2d 719 (1953), this Court upheld the presiding Justice's refusal to direct a verdict for a defendant-bottler of ginger ale in an action for negligence resulting from the

---

1. *See Winterbottom v. Wright*, 10 M. & W. 109, 152 Eng.Rep. 402 (Ex. 1842).

2. In *Pelletier v. Dupont*, 124 Me. 269, 128 A. 186 (1924), we did hold lack of privity to be a bar to an action based on breach of warranty.

presence of a brush in a bottle of ginger ale. Although the plaintiff had not purchased the ginger ale directly from the defendant but rather from a retail grocery store, the Court's opinion made no mention of any requirement of privity or any exception to the rule of privity for contaminated substances. A similar case was *Wallace v. Coca-Cola Bottling Plants, Inc.*, Me., 269 A.2d 117 (1970), where again there was no mention of any rule about privity or any exception to such a rule.

Finally, in *McNally v. Nicholson Manufacturing Co.*, Me., 313 A.2d 913 (1973), this Court had before it on report the question of whether the third count of a complaint based upon a theory of strict liability in tort stated a claim upon which relief could be granted. The Court dismissed that count of the complaint for failure to state a claim upon which relief could be granted, ruling that the law of Maine did not include a tort doctrine of strict product liability. In the course of that opinion, again by way of dicta, the Court noted:

> The *MacPherson v. Buick* approach was assimilated into the law of Maine in 1923 by *Flaherty v. Helfont*, 123 Me. 134, 122 A. 180 (1923). It was absorbed, however, not as an outright repudiation of past doctrinal error but as reaffirming 'privity' to be the general governing principle subject to the exception . . . . *Id.* at 924.

Nor does the legislative action in 1969 in any way reveal what the common law of this state was before or after 1969. The statute enacted in 1969, P.L. 1969, ch. 327, amended 11 M.R.S.A. § 2–318 which prior to that time limited the scope of sellers' warranties to persons of the household or guests of the purchaser. The new statute abolished lack of privity as a defense to an action for breach of warranty. Similarly, 14 M.R.S.A. § 161 was added by the same statute and contained identical language. Both sections also referred to actions for negligence as well as actions for breach of warranty. The effort of the Legislature, for the future, to remove any doubt as to the extent to which lack of privity would be a defense in negligence or warranty actions does nothing but demonstrate the uncertainty in the case law as to that defense.

The opinion of the Court in this case implicitly assumes we are bound by the doctrine of *stare decisis* to recognize the following three legal principles:

1. Lack of privity is a bar to an action for negligence against a manufacturer for injuries resulting from a defect in a chattel.

2. An exception to the foregoing rule exists for instrumentalities which are "inherently dangerous."

3. An instrumentality is not inherently dangerous unless the defect is latent.

Although those principles were once stated by this Court by way of dicta in 1923 and repeated by way of dicta fifty years later, never have those principles become a part of the law of the State of Maine through a direct pronouncement by this Court in a case in which such a pronouncement was necessary to the decision of the Court.

I yield to no one in my insistence upon institutional integrity through adherence to the doctrine of *stare decisis*. We are bound by the law. However, the judiciary fulfills its lawmaking function only by deciding concrete cases. Nowhere is the judiciary granted authority to make pronouncements as law when those pronouncements are not necessary to the decision of a specific case before a court. It is particularly inappropriate for this Court to consider itself bound by dicta when the rules announced in those dicta have been repudiated throughout the United States.

I find it unnecessary to state how I would rule on the open question of whether lack of privity is a bar in a products liability action based on negligence since that issue is not properly before us. I see no occasion to add to the non-binding comments made upon this subject. I will be prepared to state my views when the issue is appropriately before the Court in a case in which it is necessary to the decision of the Court and in which the issue has been fully briefed by the parties.