THOMAS S. FLAHERTY *vs.* LOUIS HELFONT.

Cumberland. · Opinion September 20, 1923.

*A bailor is not responsible to a third person for the negligent use by his bailee of the*
*chattel bailed. Where a bailment is by contract for a specified period, the bailee,*
*unless he violates the conditions of his contract, has the right of possession*
*during that period, even against the bailor. The relation of master and*
*servant exists whenever one person stands in such a relation to*
*another that he may control the work of the latter and direct the*
*manner in which it shall be done.*

In cases of substances or instrumentalities, whose dangerous qualities are latent
and not obvious, manufacturers, vendors or distributors who intentionally or
negligently fail to inform persons dealing with them of such qualities, or with
greater reason misrepresent the same, are, notwithstanding want of privity,
liable for injuries caused thereby to persons whose exposure to the danger could
reasonably be contemplated.

Automobiles are not ordinarily such imminently dangerous instrumentalities, but
may become so through latent defects in brakes or steering gear, or in other
respects.

A third party between whom and the person sought to be charged there is no
privity, must in order to recover, prove that he has suffered by reason of the
qualities or defects that make the substance or instrumentality dangerous.

The defendant delivered an automobile truck to B, with the right to buy it after
two days' trial and examination by the garage man. On the second day B,
intrusted the truck to L, an employee at the garage to take it thereto for exam-
ination. On the way thither the truck collided with the plaintiff's carriage,
causing the damage sued for. The collision was due to the fact that the driver
did not see the carriage until after the impact.

*Held:*

That L was not the servant of the defendant, and that even if the truck was so
defective in respect to its steering apparatus as to be imminently dangerous,
the defendant is not liable because the collision was not caused by such defect.

On exceptions and motion by defendant. The defendant on
November 16, 1919, being an automobile dealer, delivered to one
Morris Benjamin a Ford truck, with the understanding that he could
try it out for two or three days and if the truck was satisfactory, he
was to pay the defendant an agreed price of $225.00 for the truck.

On the day that Mr. Benjamin took the truck and on the day follow-
ing he used the truck in his business, and then entrusted it to one
John Logue to take from his place of business to a garage for exam-
ination and while driving there collided with the wagon of the plaintiff
in which he was riding, resulting in serious injuries to the plaintiff,
this action resulting alleging negligence.

The case was tried and the jury returned a verdict for plaintiff for
nineteen hundred dollars, and defendant excepted to the charge of
the presiding Justice, and also filed a general motion for a new trial.
Motion sustained. Verdict set aside. New trial granted.

The case is fully stated in the opinion.

*J. E. F. Connolly*, for plaintiff.

*C. B. Skillin and E. H. Wilson*, for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL,
WILSON, DEASY, JJ.

DEASY, J. On November 17, 1919, an automobile truck ran
into a carriage on Cumberland Avenue, Portland. The plaintiff
who was riding in the carriage received injuries, and to recover dam-
ages therefor brought this suit against the defendant. A verdict was
rendered in his favor.

The rather remote connection between the driver of the truck and
the defendant is shown by the following abbreviated summary of the
facts: The day before the accident the defendant Helfont, owning
a used Ford truck bargained and delivered it to Morris Benjamin.
Benjamin was to try the truck, have it examined and then if satisfied,
to pay the agreed price. He had used the truck parts of two days to
try it. Passing the Cumberland Avenue Garage, Benjamin asked
the person in charge to send a man to his (Benjamin's) shop to bring
the car back to the garage. John L. Logue was sent for this purpose.
He rode with Benjamin to the latter's place of business. While
driving the truck back alone the collision with the plaintiff's carriage
occurred.

The declaration as amended contains three counts. The first
relies upon the "dangerous instrumentality" theory; the second
and third set up negligent operation of the truck. It is apparent
from the testimony and from the charge that the case was tried
mainly upon the issues raised by the second and third counts.

It is plain that Helfont is not responsible for any negligence on the part of Benjamin or Benjamin's employee. There was some controversy as to whether the title had passed to Benjamin, and whether the latter were a vendee or bailee. This is immaterial. In neither case does the principle of respondeat superior apply.

"It seems to be very well settled that a bailor cannot be held responsible to a third person for the negligent use by his bailee of the chattel bailed." 3 R. C. L., 145.

But the plaintiff does not contend that Helfont was responsible for Benjamin's acts or negligence. The essence of his theory, in his argument strenuously urged and in his brief accentuated by italics, is that the truck "was on its way to a mechanic for inspection pursuant to defendant's instruction."

The testimony on this point omitting all non-essentials is "I (Benjamin) told him that I would buy the truck if it was all right and he told me to take it and I took the truck and tried it . . . He told me to take it for a couple of days, . . . told me to show it to a garage man, . .. . to let anybody see it that I wanted to. . . I told him I would pay $225 if it was all right."

The plaintiff contends that when Benjamin had determined to show the truck to a garage man and had selected the garage and had permitted its employee to take the truck for inspection that such employee ipso facto became the servant of the defendant for whose acts and negligence the defendant is responsible.

The relation of master and servant exists "Whenever one person stands in such a relation to another that he may control the work of the latter and direct the manner in which it shall be done. ˙The essential elements are that the master shall have control and direction not only of the employment to which the contract relates, but of all its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting the relation does not exist." 18 R. C. L., 490. The substance of this definition has been generally adopted and frequently reiterated by courts.

Not an element of this definition is illustrated in the present case. The defendant did not select the garage or man. ˙ He had no right to do so. That was left wholly to Benjamin. The defendant had no power to direct Logue, the driver, as to result or means. What garage the truck should be taken to, by whom, through what streets, at what

speed, were all matters beyond Helfont's control. He had no power to discharge Logue. He could not even have reclaimed the truck from him, for the time, two days, which by the contract of bailment Benjamin was to have the car on trial had not elapsed.

Where a bailment is by contract for a specified period the bailee has the right of possession during that period even against the bailor unless he violates the conditions of the contract. *Simpson* v. *Wrenn*, 50 Ill., 224; *Hickok* v. *Buck*, 22 Vt., 149; *Bowen* v. *Coker*, S. C., 2 Rich. Law, 13; 6 Corpus Juris, 1154, 3 R. C. L., 85.

That the inspection of the car might result in some benefit to Helfont in promoting the sale is immaterial. Some such incidental advantage accrues to the bailor from all contracts of bailment.

But the plaintiff says by the first count that even if the principle of respondeat superior does not apply the defendant is liable for the reason that the truck was an "imminently dangerous instrumentality."

"The general rule is that no liability attaches for injury to persons who cannot be brought within the scope of the contract." *Olds* v. *Shaffer*, 145 Ky., 616, 140 S. W., 1047; *Pitman* v. *Lynn Gas Co.*, (Mass.), 135 N. E., 223.

But in case of substances or instrumentalities which are imminently dangerous the rule is subject to an exception. High explosives, poisons and impure foods are examples.

In case of any such substance whose dangerous qualities are latent and not obvious, manufacturers, vendors or distributors who intentionally or negligently fail to inform persons dealing with them of such qualities, or with greater reason misrepresent the same, are, notwithstanding want of privity, liable for injuries caused thereby to persons whose exposure to the danger could reasonably be contemplated. *Wellington* v. *Oil Co.*, 104 Mass., 67; *Roberts* v. *Brewing Co.*, 211 Mass., 449; *Cunningham* v. *House Furnishing Co.*, 79 N. H., 435, 69 Atl., 120; *Ward* v. *Pullman*, 138 Ky., 554, 128 S. W., 606; *Travis* v. *Bridge Co.*, Ind. 122 N. E., 1.

Counsel for the plaintiff concedes that automobiles are not ordinarily such imminently dangerous instrumentalities. He contends, however, that they may become so through latent defects in brakes or steering gear or in other respects. This reasoning is sound and is supported by eminent authorities. *Olds Motor Works* v. *Shaffer*, supra; *Johnson* v. *Cadillac Co.*, 261 Fed., 878; *Texas Co.* v. *Veloz*,

(Texas), 162 S. W., 377; *Collette* v. *Page*, (R. I.), 114 Atl., 136; *McPherson* v. *Buick Co.*, 217 (N. Y.)., 382, 111 N. E., 1050; *Quackanbush* v. *Ford Motor Co.*, 153 N. Y. S., 131.

Whether the jury were justified in finding, if they did find, that the truck bargained by the defendant to Benjamin was so defective as to be an imminently dangerous instrumentality and that the defendant knew or should have known of such defect we need not determine for one other essential element is wanting.

A third person having no contractual relations with the party sought to be charged must in order to recover prove that he has suffered by reason of the qualities or defects that make the instrumentality dangerous. A man injured by being run over by a cart loaded with dangerous explosives has no more or different remedies than he would have if the cart had been loaded with bricks.

The learned counsel for the plaintiff appreciates this and in his declaration having alleged that the truck "was in a defective condition as regards the steering and controlling mechanism," he says that it "became so unmanageable and unresponsive to its controlling mechanism that it collided with the rear of said plaintiff's wagon." But of this alleged fact which is the gravamen of the first count there is no evidence. The testimony shows that the collision was due to an entirely different cause.

The only witness who attempts to tell how the accident occurred was Logue, the driver. Some months before the trial he signed a written statement that "the only reason I know for the accident was the poor lights, the dirty wind shield and the fact that I did not see Flaherty's team until I struck it." He says that at that time he did not remember about the steering gear. In his testimony given at the trial he says that the steering gear was defective, but does not claim that this defect caused the accident. He testifies, "Well, when I came down to the corner of Myrtle I stopped at the corner because there was an auto coming up and then when I started around the corner I hit Flaherty's team. I did not know he was there until I hit him."

Q. "Why not?"

A. "Well I couldn't see him."

It is fairly obvious that steering gear in perfect order would not have improved his vision. Assuming that the steering gear was in

dangerously defective condition it is apparent that such defect was not the cause of the accident.

It is unnecessary to consider the exceptions.

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*