THERESA PELLETIER *vs.* PHILIP DUPONT.

Androscoggin.    Opinion March 3, 1925.

*An action on an alleged breach of warranty, that a certain loaf of bread purchased by the plaintiff of a retail dealer was wholesome and fit for human consumption and free from any foreign substances dangerous and harmful to health, will not lie against the manufacturer or baker of the bread, as there is no privity of contract between a manufacturer and a consumer who purchases the articles of a third party, or retail dealer. A consumer's remedy, if any, in such cases is not founded on a breach of a contract of implied warranty, but on a breach of duty on the part of a manufacturer to use due care in the preparation of articles intended for consumption as food, and is founded on negligence.*

In the instant case no express warranty existed running from the defendant to the plaintiff by reason of any printed matter contained on the wrapper of each loaf of bread when delivered by the defendant to the retail dealer, as there was no privity between the plaintiff and defendant or any consideration for such a warranty; nor did the printed matter on the wrapper constitute such a warranty as is declared on in the plaintiff's declaration.

On exceptions. An action in assumpsit based upon an alleged breach of warranty. The plaintiff alleged that she purchased of her retail grocer several loaves of bread which was manufactured by the defendant and by him sold to the retail grocer and while eating some

of the bread a common pin concealed in the bread caught in her throat and injured her. At the conclusion of the plaintiff's testimony the presiding Justice ordered a nonsuit and the plaintiff excepted. Defendant contended that there was no privity of contract between the plaintiff and defendant hence there could be no breach of warranty. Exception overruled.

The case is sufficiently stated in the opinion.

*Benjamin L. Berman, Jacob H. Berman and Edward J. Berman,* for plaintiff.

*Frank A. Morey,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, MORRILL, WILSON, STURGIS, BARNES, JJ.

WILSON, J. The plaintiff, who lives with her husband in Lewiston, had occasion to use considerable quantities of bread to supply the needs of an immediate family of six or seven and of some score of boarders or mealers. She was accustomed to order the household supplies chiefly of a certain firm dealing in groceries and provisions, including bread.

The defendant is a baker who manufactures or bakes loaf bread for domestic consumption and known to the trade as "Dupont's Edgeworth Bread." Each loaf of defendant's bread of this brand was, before it left his bakery, wrapped in waxed paper and sealed. The manner of sealing does not appear; but from the evidence the jury might have been warranted in finding that it was so sealed as to retain the wrapper around the bread until the seals were broken, and that the common pin which it is alleged was found imbedded in a loaf of this bread, purchased by the plaintiff, in some way entered the loaf before it left the defendant's bakery.

On each wrapper appeared the following: "Purity Nutrition Cleanliness absolutely applies to Edgeworth Bread. It is made from the highest standard of flour, milled from the choicest selection of Hard Wheat, renowned for the superior quality and quantity of gluten it contains. Edgeworth Bread is the cheapest, because most nutritious. It is rich in flavor and retains its moisture for several days. It is made under the most sanitary rulings, hence the most cleanly.

The above facts are the reasons for the great popularity of this celebrated bread. It is guaranteed after thorough inspection."

On the 4th day of February, 1924, the plaintiff gave an order to the local dealer for several loaves of bread. It does not appear that she expressly ordered bread manufactured by the defendant, but there was delivered to her in the morning of that day by the grocer five loaves of "Edgeworth Bread" wrapped in wax paper, which but a short time previous, on the same day, had been left at the store by one of the delivery carts of the defendant.

Later on the same day, one of the daughters of the plaintiff removed the sealed wrapper from one of the loaves, laid the loaf upon the wrapper, spread on a shelf or board, and cut from the loaf three or more slices. One of the slices was handed to the plaintiff who began to eat it and after a few moments exclaimed that there was something in the bread which she had swallowed which proved to be a common pin.

Whereupon the plaintiff brought this action against the defendant as the manufacturer of the bread upon an alleged warranty that it was wholesome and fit for human consumption as food and was free from any foreign substances dangerous and harmful to the health of those using the bread as food, and seeks to recover for medical attendance and the pain and suffering she endured by reason of the alleged breach.

At the close of the plaintiff's case the presiding Justice directed a nonsuit, to which ruling the plaintiff duly and seasonably excepted.

The liability of the manufacturer of food products to the ultimate consumer when purchased of a retail dealer or middleman is one of novel impression in this State; but has been considered in various forms in other jurisdictions.

It may not be out of place in view of the conflicting views as to the grounds of the manufacturer's liability, to preface the discussion of the issue raised in this action with a brief statement of the law applying to sales of personal property in general and its modification and application to the sale of food products.

The general rule in the case of a sale of personal property, except as to title, is the familiar one of *caveat emptor*. Another equally well-settled principle is that a manufacturer, except when manufacturing for a specific use, and then only to the party for whom made, is not liable to a third party or a stranger to the contract of manufacturer

or sale, for any defects which may later develop in his product unless known to him and rendering the article dangerous.   *Downing* v. *Dearborn*, 77 Maine, 457; *White* v. *Oakes*, 88 Maine, 367; *Lewis* v. *Terry*, 111 Cal., 39; *Berger* v. *Standard Oil Co.*, 126 Ky., 155; *Cooley on Torts*, (3d ed.), 1486-89; 24 R. C. L., 512; *Newhall* v. *Ward Baking Co.*, 240 Mass., 435, 436; *Birmingham Chero Cola Co.* v. *Clark*, 205 Ala., 678, 680.

But these rules have their exceptions.   In respect to the sale of materials intended to be used as food, while there is no implied warranty where the transaction is between two dealers, or a manufacturer and a dealer, that the article is fit for consumption as food, *Howard* v. *Emerson*, 110 Mass., 320; *Giroux* v. *Stedman*, 145 Mass., 439; *Farrell* v. *Manhattan Market Co.*, 198 Mass., 271; *Swank* v. *Battaglia*, 84 Or., 159; 24 R. C. L., 197; whatever may be the liability in case of fraud or deceit or negligence in preparation; *Mazetti* v. *Armour & Co.*, 75 Wash., 622; where, however, the transaction is between a dealer and a consumer, unless the consumer assumes the risk by selecting the article himself, there is an implied warranty that it is wholesome and fit for consumption as food; Uniform Sales Act, Chap. 191, Sec. 15 (1); Public Laws, 1923; *Farrell* v. *Manhattan Market Co.*, supra; *Friend* v. *Child Dining Hall Co.*, 231 Mass., 65; *Ward* v. *Great Atlantic & Pacific Tea Co.*, 231 Mass., 93; 24 R. C. L., 195; 26 C. J., 783-84; 11 R. C. L., 1119-20; though this court has made an exception in the case of canned or tinned goods, *Bigelow* v. *M. C. R. R.*, 110 Maine, 105; *Trafton* v. *Davis*, 110 Maine, 318, 325; an exception not recognized in Massachusetts as appears in the case last cited from that jurisdiction.

The rule that a manufacturer is not liable to any one except his immediate vendee for any defects in his product, even though due to his negligence, also has its exception in case of articles of a dangerous nature or containing known defects, *Berger* v. *Standard Oil Co.*, 126 Ky., 155; *Waters Pierce Oil Co.* v. *Deselms*, 212 U. S., 159; *Wellington* v. *Downer K. Oil Co.*, 104 Mass., 64; *Tompkins* v. *Quaker Oats Co.*, 239 Mass., 149; but this liability is recognized as founded in tort and not on contract, 24 R. C. L., 514-15; 17 A. L. R., 683.

It is by analogy to this class of cases that this principle has been applied to the sale of drugs and to food products when intended for human consumption by reason of the consequences to life and health

which may flow from improperly prepared products or containing deleterious materials, if placed on the market for consumption as medicine or food. The cases recognizing this liability are too numerous for citation. They may be readily referred to in 11 R. C. L., 1122; 26 C. J., 785; 17 A. L. R., 686-88.

While the liability is generally recognized, the principle on which it rests is not agreed upon: some authorities holding there is an implied warranty by a manufacturer running to the consumer, even though he purchases of a third party or dealer; while others hold that the obligation to the consumer who purchases of a dealer, or middleman, rests entirely on negligence or failure to exercise due care in the preparation of such products, knowing them to be intended for human consumption, and there can be no warranty running to the consumer who does not purchase of the manufacturer, since there is no privity of contract between them. *Davis* v. *Van Camp Packing Co.*, 189 Iowa, 775; *Rainwater* v. *Coca Cola Bot. Co.*, 131 Miss., 315; *Tomlinson* v. *Armour & Co.*, 75 N. J. L., 748; *Freeman* v. *Shults Bread Co.*, 163 N. Y. S., 396; *Chysky* v. *Drake Bros. Co.*, 235 N. Y., 468; *Boyd* v. *Coca Cola Bottling Co.*, 132 Tenn., 23; *Watson* v. *Augusta Brewing Co.*, 124 Ga., 121; *Birmingham Chero Cola Bottling Co.* v. *Clark*, 205 Ala., 678; *Salmon* v. *Libby, McNeil & Libby*, 219 Ill., 421; *Park* v. *C. C. Yost Pie Co.*, 93 Kan., 334; *Goldman & Freeman Bottling Co.* v. *Sindell*, 140 Md., 488; *Flaccomio* v. *Eysink*, 129 Md., 367; *Meshbesher* v. *Channellene Mfg. Co.*, 107 Minn., 107; *Ketterer* v. *Armour & Co.*, 247 Fed., 921; *Drury* v. *Armour & Co.*, 140 Ark., 371; *Roberts* v. *Anheuser Busch Brewing Co.*, 211 Mass., 449; *Tonsman* v. *Greenglass*, 248 Mass., 275; *Wilson* v. *Ferguson Co.*, 214 Mass., 265.

It is at least a significant fact that in a very great majority of the reported cases the action has been based on negligence and the liability held to be founded on a duty owing to the public, and in only a few instances has any attempt been made to base the right of recovery on any contractual relations alleged to exist between the manufacturer and the ultimate consumer.

The only cases to which our attention has been called, in which this issue was actually involved, and on which it has been held that there was an implied warranty running from the manufacturer of food products to the consumer when purchased by the consumer of a third party, or retail dealer, are: *Davis* v. *Van Camp Packing Co.*,

189 Iowa, 775; *Jackson Coca Cola Bottling Co.* v. *Chapman,* ·106 Miss., 865; *Rainwater* v. *Coca Cola Bottling Co.,* 131 Miss., 315; *Hurtzler* v. *Menshim,* (Mich.), 200 N. W., 155 and *Chysky* v. *Drake Bros. Co.,* 182 N. Y. S., 459; the last case, however, has been reversed by the New York Court of Appeals, 235 N. Y., 472.

This issue was not involved in *Mazette* v. *Armour & Co.,* 75 Wash., 622, which was an action by a restaurant proprietor against the manufacturer for damage to his business through furnishing him with unwholesome products; and the recognition by the court in that case of the doctrine of implied warranty running from the manufacturer to the consumer, regardless of any privity of contract between them, is mere *dicta,* as was also the statement of the court in *Ward* v. *Morehead City Sea Food Co.,* 171 N. C., 33 that there were numerous authorities holding such a doctrine, and citing *Watson* v. *Augusta Brewing Co.;* 124 Ga., 121 as a single example, which case, however, is not based on any contractual relation at all, but on a duty owing to the public; or in other words, was an action *ex delicto.*

The case of *Park* v. *C. C. Yost Pie Co.,* 93 Kan., 334 is sometimes found cited as sustaining the doctrine of an implied warranty running with food products into whomsoever hands they may finally come to be consumed, but this case, too, goes no farther than to recognize a duty to the public to use that degree of care commensurate with the consequences, that may flow from supplying to the public injurious food products or containing foreign or deleterious matter, and a liability in damages for a breach of that duty. The case is not based on, nor does it recognize any warranty by the manufacturer enuring to the consumer who purchases of a third party.

On the other hand, such a doctrine is contrary to the well-established principles, that there can be no implied warranty without privity of contract, and warranties as to personal property do not attach themselves to and run with the article sold. Williston on Sales, Sec. 244; Williston on Contracts, Vol. II., Sec. 998; *Davidson* v. *Nichols et al.,* 11 Allen, 514, 517; *Lebourdais* v. *Vitrified Wheel Co.,* 194 Mass., 341; *Roberts* v. *Anheuser Busch Brewing Co.,* 211 Mass., 449, 451; *Gearing* v. *Berkson,* 223 Mass., 257; *Chysky* v. *Drake Bros. Co.,* 235 N. Y., 468, 472; *Tonsman* v. *Greenglass,* 248 Mass., 275.

It is further overborne, we think, by the weight of authority to the contrary and sounder reasoning. *Roberts* v. *Anheuser Busch Brewing Co.,* supra; *Gearing* v. *Berkson,* supra; *Chysky* v. *Drake Bros. Co.,*

supra; *Drury* v. *Armour & Co.*, 140 Ark., 371; *Birmingham Chero Cola Bottling Co.* v. *Clark*, 205 Ala., 678; *Flaccomio* v. *Eysink*, 129 Md., 367, 379; *Goldman & Freeman Bottling Co.* v. *Sindell*, 140 Md., 488; *Crigger* v. *Coca Cola Bottling Co.*, 132 Tenn., 545; and is also recognized though not in issue in *Tomlinson* v. *Armour & Co.*, 75 N. J. L., 748.

Of the cases referred to as upholding the doctrine of an implied warranty by a manufacturer of food products and running to the consumer, even though he purchases of a third party or middleman, the case of *Davis* v. *Van Camp Packing Co.*, supra, must be regarded as the leading case and the most fully considered.

But an examination of the opinion of the court in this case discloses practically no attempt at discrimination between cases involving the liability of a manufacturer to a consumer who purchases of a dealer, and the liability of the dealer, or between those involving the liability of the manufacturer on the ground of negligence or fraud and on the ground of an implied warranty running with the products into whomsoever hands they may come. From a general review of the authorities, without apparent effort to distinguish the principles involved, the court draws the unwarranted conclusion, we think, "that from the decisions, and particularly the later decisions, . . . . there is an implied warranty as contended by the plaintiff, and the question as to privity is not controlling."

The only cases cited in the opinion on which its conclusion could rest are the Mississippi cases found in 106 Miss., 868; 131 Miss., 315 and a dictum in the case of *Ward* v. *Morehead City Sea Food Co.*, supra, all of which are based, in the first instance, on the case of *Watson* v. *Augusta Brewing Co.*, supra, which as before pointed out, is not an action *ex contractu* on an implied warranty, nor does it support the doctrine that an implied warranty may exist without any privity of contract.

The other cases expressly noted in the opinion are either clearly based on the ground of negligence, or like the *Minnesota Case*, 115 Minn., 172, is an action between the person furnishing the food and the person consuming it.

After a careful review of the authorities, this court, while approving the doctrine recognized in *Bigelow* v. *M. C. R. R.*, 110 Maine, 105, and *Trafton* v. *Davis*, 110 Maine, 325 that a manufacturer of food under modern conditions of preparing and dispensing such products

owes a duty to every consumer purchasing his products in the open market, finds no good reason for repudiating or modifying, even in the case of food products, however prepared, the well-established rule that in order to recover on a warranty, there must be a privity of contractual relations between the parties, which is wholly lacking in the case at bar.

It is suggested, however, that even if there were no implied warranty by the defendant in this case, on which the plaintiff may base a right of recovery, that the printed matter constituted an express warranty of its wholesomeness as food and that it was free from any foreign or deleterious substance.

This contention must also fail as a basis for recovery by the plaintiff, not only for the reason that there was no privity of contract between the parties, nor any consideration for such a warranty, but also for the further reason that the printed matter on the wrappers cannot be construed as an express warranty that by no chance, through accident or negligence, did the bread contain any foreign substance, such as a common pin.

The plaintiff's declaration is not founded on an express warranty, *in haec verba*, nor does the printed matter contained on the wrappers support the allegations.

The allegations are that the bread was warranted to be wholesome and fit for consumption as human food and to be free from harmful and dangerous substances.

The representations on the wrapper are: that Edgeworth Bread is pure nutritious and clean, which must be construed in the light of the provisions of Sec. 12 of Chap. 36, R. S., and what immediately follows on the wrapper,—in other words, that it was pure and not adulterated as defined in Sec. 12 of Chap. 36, and as to the standards set forth on the wrapper: that it was nutritious because it was made from the highest grade and choicest selection of wheat renowned for the quality and quantity of gluten it contains; and that it was clean, because as set forth, "It was made under the most sanitary rulings," and in an up-to-date and sanitary bakery.

That it was guaranteed after thorough inspection, must be construed as expressly guaranteeing it only in the above particulars, and not that it was expressly represented to be free from every possible foreign substances which did not enter into its composition as one of its ingredients as bread, and which may have found its way

into it by accident, or even by negligence,—unless the foreign sub-
stance could be considered as a breach of the guaranty that the
bread was prepared in a clean and sanitary manner, of which the
mere presence of an ordinary pin would be no evidence.

In other words the defendant represented his bread to be pure
and nutritious as to the ingredients which entered into its composi-
tion as bread and according to the standards of quality expressly
set forth on the wrapper, and clean and sanitary as to its manner of
preparation and baking.

It is not contended that the bread was not pure and wholesome
and fit for food so far as any ingredient that entered in its composition
as bread is concerned, measured by any standard, nor is there any
allegation or claim that it was not clean and sanitary as represented
on the wrapper.

The presence of a foreign substance by accident or negligence, and
not one of the ingredients, unless proof of insanitary methods, could
not be held to be a breach of any express warranty contained on the
wrappers of the defendant's bread, even if there was privity of con-
tract between him and the plaintiff, though if present through negli-
gence she might have a right of action whether there was privity or
not.   *Newhall* v. *Ward Baking Co.*, 240 Mass., 437.

In actions for deceit based upon similar representation the Massa-
chusetts Court has recently held in the last cited case and in *Alpine*
v. *Friend Bros., Inc.*, 244 Mass., 164, that such representations did
not include the accidental presence in bread, otherwise fit for con-
sumption as food, of a foreign substance like a nail or piece of tin,
"not permeating the loaf, nor constituting one of its ingredients."

That the actions in these cases were based on deceit instead of
express warranty, under which form of action the plaintiff would
not have had the burden of proving scienter and intent to defraud,
no doubt was due to the Massachusetts Court having so unequivo-
cally held that there can be no warranty where there is no privity of
contract.   See *Gearing* v. *Berkson*, supra, where a husband recovered
of a dealer for selling him unwholesome provisions, yet his wife could
not, though she purchased the food.   It being held that she was
acting as her husband's agent in making the purchase, and hence there
was no privity of contract between her and the dealer and therefore
she could not recover on an implied warranty that the fowl, which
was selected by the dealer, was fit for consumption as food.

Whether a like situation existed in the case at bar does not clearly appear. It was not shown to whom the bread was charged, or credit given, by the dealer, whether to the plaintiff or her husband, but this question is not material upon our view of the case, as there was clearly no privity of contract between the plaintiff and defendant, even though she was the actual purchaser of the bread as alleged in her declaration, there being no evidence to sustain the allegation in the first count that the dealer of whom she purchased was a mere distributing agent for the defendant.

*Exception overruled.*