Carl O. BROWN and Irene D. Brown, Plaintiffs,

v.

CLARK EQUIPMENT COMPANY, Defendant.

Civ. No. 78–111–B.

United States District Court, D. Maine.

Nov. 24, 1982.

Daniel G. Lilley, E. Paul Eggert, Naomi Honeth, Portland, Me., for plaintiffs.

David C. King, Edith Richardson, Bangor, Me., for defendant.

## MEMORANDUM DECISION AND ORDER

CYR, District Judge.

The United States Magistrate recommends that plaintiffs be relieved from that portion of the judgment entered on August 11, 1981[1] which dismissed counts I and IV of their complaint for lack of privity with the defendant manufacturer, because the privity requirement of Maine law was abruptly abolished eight months after judgment, *see Adams v. Buffalo Forge Co.,* Me., 443 A.2d 932 (1982). Plaintiffs moved for relief from judgment within days of the *Buffalo Forge* decision. The relevant facts are laid out in the attached copy of the recommended decision.

The defendant asserts that the change in law is not so extraordinary a circumstance as would justify relief from judgment. It points out that the change of law occurred in a case unrelated to the present action; that plaintiffs elected to proceed in federal court, thereby depriving themselves of the opportunity to persuade the Maine Law Court that the privity requirement should be abandoned; that plaintiffs failed to appeal or to request certification of the state law issue to the Law Court; and that if plaintiffs are permitted to reinstate their action because of the change of law brought about by *Buffalo Forge* "any number of other plaintiffs" in both state and federal courts may do so as well. Defendant further suggests that a grant of relief from judgment in these circumstances would vio-

late the *Erie* doctrine, since the Law Court has not indicated that *Buffalo Forge* is to be applied retroactively in earlier, unrelated cases already finally adjudicated. It is asserted that when the Law Court has changed Maine tort law in the past, the new rule has been applied only in cases not "terminated in a final manner." *MacDonald v. MacDonald,* Me., 412 A.2d 71 (1980) [abolishing spousal immunity]. *Also citing Myrick v. James,* Me., 444 A.2d 987 (1982); *Black v. Solmitz,* Me., 409 A.2d 634, 640 (1979); *Higgins v. Robbins,* Me., 265 A.2d 90, 93 (1970).

## I. STANDARDS FOR RELIEF FROM JUDGMENT

■ Federal law prescribes the standards and procedures for setting aside a final judgment in a federal court action. *Johnson Chemical Co. v. Condado Center, Inc.,* 453 F.2d 1044, 1047 (1st Cir.1972). Federal Rule of Civil Procedure 60(b)(6) provides:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding, for ... any other reason justifying relief from the operation of the judgment.[2]

Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).

■ Although the United States Supreme Court has not directly determined the applicability of Rule 60(b)(6) to a re-

---

**1.** Plaintiffs' motion requests relief from the entire judgment, without stating any basis for relief from the dismissal of counts II and III. *The magistrate's recommended decision of July 17, 1981 reflects that plaintiffs did not resist summary judgment on counts II and III.*

**2.** Rule 60(b)(5), which permits relief from a final judgment if "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application," has been urged as an alternative method of dealing with motions for relief from judgment based on a change of law. *See* Comment, 43

U.Chi.L.Rev. 646 (1976). However, the courts have more narrowly construed Rule 60(b)(5) so as to preclude its application in such cases, *see* 7 J. Moore, *Federal Practice* ¶ 60.26[3] at 325 (2d ed. 1982); 11 Wright & Miller, *Federal Practice and Procedure* § 2863 at 204 (1973); *see also* Comment, *Pierce v. Cook & Co.: Change In State Law As A Ground For Relief From A Federal Judgment,* 124 U.Penn.L.Rev. 843, 848–51 (1976), and plaintiffs do not seek relief thereunder, *see* Plaintiff's Response to Defendant's Objections to Magistrate's Recommended Decision, filed July 21, 1982, at 2.

quest for relief from judgment based on a change in the law, it has applied the rule in three cases which are instructive here. *See Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) [granting relief from four-year old default judgment procured while petitioner was ill and wrongfully incarcerated]; *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) [denying relief from judgment revoking citizenship, despite later appellate ruling in favor of similarly situated person tried with petitioner, on ground petitioner made deliberate choice not to appeal]; *Polites v. United States,* 364 U.S. 426, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960) [denying relief from revocation of citizenship, four years after judgment, because change in Supreme Court case law upon which judgment was based was not substantial enough, but indicating that relief might be available, notwithstanding failure to appeal, where appeal was not taken in face of clearly applicable adverse rule of law]. These cases establish that relief from final judgment under Rule 60(b)(6) requires a showing of "extraordinary circumstances," on the basis of a judicial balancing of the need for finality and the need to do justice in the individual case. *See Ackerman,* 340 U.S. at 199, 71 S.Ct. at 212; *Klaprott,* 335 U.S. at 614–15, 69 S.Ct. at 390.

The Court has discovered only one reported case where relief from judgment was granted on the basis of a change made in *state law* after a *federal* court judgment became final. In *Pierce v. Cook & Co., Inc.,* 518 F.2d 720 (10th Cir.1975), three individuals, who were riding in the same automobile at the time of an accident, brought three separate state court suits against Cook & Co., Inc., alleging negligence by an independent contractor of Cook & Co., Inc. Two of the three actions were removed to federal court, where summary judgments were granted in favor of the defendant on the basis of state court precedent insulating shippers from liability for the torts of their independent contractors. In December, 1970 the Tenth Circuit affirmed on the basis of the state court precedent. In 1974, after having had his action dismissed by the state trial court on the basis of the same

precedent, the plaintiff whose action was not removed to federal court prevailed upon the state's highest court to overrule the precedent. Six months later the federal court plaintiffs moved for relief from judgment. In June, 1975 the Tenth Circuit, sitting *en banc,* granted relief under Rule 60(b)(6) on the ground that the divergent state and federal court results on identical claims arising out of a common accident presented extraordinary circumstances and that such treatment of plaintiffs who were *forced* to litigate in federal court would violate the *Erie* doctrine. *Id.* at 723. The court distinguished an earlier case denying relief in similar circumstances, on the ground that there the decisional change had arisen out of an unrelated case. *Id.* A concurring opinion emphasized that relief from a final federal judgment based on a change in state law should only be available to the party *who did not invoke* federal jurisdiction, not to one who voluntarily selects the federal forum. *Id.* at 724–25. Two dissenters expressed the view that there is no authority for the rule that divergent judicial results arising out of the same operative circumstances are, *per se,* grounds for relief under Rule 60(b)(6) and that any such rule would render federal judgments entered in diversity cases arising out of a common disaster merely "dormant, not final," even where the federal judgment is for *the plaintiff. Id.* at 725 (*dissent*). The dissenters also expressed the view that *Erie* would not be violated by permitting the federal judgment to stand, since the judgment was based on the then-controlling state law. *Id.* at 726.

## II. APPLICABLE LAW AT TIME OF JUDGMENT

In order to assess the merits of the plaintiffs' request for relief from judgment it is essential that the status of Maine law at the time of entry of the judgment be made clear.

### A. *General Principles of Law Governing the Requirement of Privity in Negligence Actions*

The general rule prior to the twentieth century provided that a manufacturer or

seller of a product alleged to have caused injury was not liable therefor in a negligence action to one with whom he was not in privity of contract. *See Winterbottom v. Wright,* 152 Eng. Reprint 402 (1842) [originating the rule]. The rule was rendered less workable with the onset of the industrial revolution as it became increasingly common for products used in the home to be produced and distributed far from the locations of the ultimate users. 2 R. Hurst & H. Bailey, *American Law of Products Liability* § 10:24 at 384 (2d ed. 1974). During the period when the privity requirement held sway, retailers and consumers alike were in a better position to inspect the safety of manufactured products, which were seldom either complicated or fraught with serious risks of injury as a result of imperfect construction or inadequate testing; nor was there the myriad of manufactured products later available through the miracles of modern chemistry, which are often not susceptible to meaningful inspection by retailers and consumers. *Id.* at 384–86.

In order to conform product liability law to the complexities of the twentieth century, courts fashioned many exceptions to the rule, such as that for "inherently dangerous" products (e.g., poisonous drugs, weapons, explosives, flammable fuels); products not so obviously dangerous by their very nature (e.g., poisonous or injury-causing foods, weed-killers, insecticides); and "imminently dangerous" products, those which are reasonably certain to imperil life or limb if negligently made (e.g., automobiles, tires, car batteries, airplanes, farm tractors, trailer hitches). *Id.,* §§ 10:25–10:28. The "imminently dangerous" product exception, generally considered as having stemmed from the 1916 New York case *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916), may reasonably be regarded as a virtual repudiation of the privity requirement in cases of product-caused injuries. *Id.* § 10:27 at 394. The landmark case which unequivocally repudiated the privity doctrine was decided in 1946, when the

Massachusetts Supreme Judicial Court determined that it would be preferable to abandon the privity requirement altogether rather than subject it to numerous exceptions generating needless litigation as to their applicability. *See Carter v. Yardley & Co.,* 319 Mass. 92, 64 N.E.2d 693 (1946). *See also Restatement of Torts 2d* §§ 388–399.

### B. *Maine Law Before Buffalo Forge*

Five Maine Supreme Judicial Court decisions,[3] antedating *Buffalo Forge,* should be examined in order to determine the status of Maine law at the time these plaintiffs filed the present action in *federal court* and at the time final judgment was entered against them in August, 1981.

In *Flaherty v. Helfont,* 123 Me. 134, 122 A. 180 (1923), the plaintiff was riding in a carriage which collided with a truck owned by defendant and driven by the employee of a garage which a potential buyer had asked to inspect the vehicle. The court rejected the theory that the defendant was negligent for having instructed the potential buyer to show the car to a mechanic for inspection. *Id.* at 136, 122 A. 180. Plaintiff also based his claim on the theory that the truck was an "imminently dangerous instrumentality" due to latent defects in the brakes or steering gear. *Id.* at 137, 122 A. 180. The court recognized that manufacturers, vendors and distributors of substances or instrumentalities whose dangers are "latent and not obvious" and "who intentionally or negligently fail to inform persons dealing with them of such qualities, or with greater reason misrepresent the same, are, notwithstanding want of privity, liable for injuries caused thereby to persons whose exposure to the danger could reasonably be contemplated." *Id.* at 137, 122 A. 180. The court considered "sound and . . . supported by eminent authorities" the position that a vehicle may become an imminently dangerous instrumentality through latent defects in its brakes or steering gear. *Id.* But the court did not reach such ques-

---

**3.** *Flaherty, Pelletier, McNally* and *Burke* are discussed here. *Hurd,* the specific authority

upon which judgment was entered. against these plaintiffs, is discussed later.

tions as whether a jury could have found the truck so defective as to have been "imminently dangerous" or whether the defendant knew or should have known of such defects, since it found no evidence that the accident was the result of any defect in the truck. *Id.* at 138, 122 A. 180.

In *Pelletier v. DuPont,* 124 Me. 269, 128 A. 186 (1925), the court held that the purchaser of a loaf of bread, later found to contain a concealed common pin, could not sue the manufacturer for a breach of warranty, because the purchaser was not in privity with the manufacturer, having purchased it from a third-party retailer. The court began its analysis by discussing the "well-settled principle that a manufacturer, except when manufacturing for a specific use, and then only to the party for whom made, is not liable to a third party or a stranger to the contract of manufacture or sale, for any defects which may later develop in his product unless known to him and rendering the article dangerous." *Id.* at 272, 128 A. 186. The Law Court then noted an exception for food "dealers" who impliedly warrant to consumers that it is wholesome and fit for human consumption. *Id.* The court noted an exception "in cases of articles of a dangerous nature or containing known defects," *id.,* but stated that "this liability is recognized as founded in tort and not on contract," *id.* The court approved the doctrine that a food manufacturer "owes a duty to every consumer," but refused to modify the well-established privity requirement in warranty actions. *Id.* at 275–76, 128 A. 186. In addressing whether there was a cause of action on the part of the consumer arising by virtue of the express warranties appearing on the wrapper, the court held that there was not only a lack of privity and consideration, but also that the warranty on the wrapper covered only the quality of the ingredients, and that the wrapper did not warrant that by no chance, as through accident or negligence, would the bread contain any foreign substance such as a common pin. The court then stated that, had the foreign substance gotten into the bread due to the negligence of the manufacturer, plaintiff "might have

a right of action whether there was privity or not." Although the court did not explicitly refer to any "exception" to the privity requirement in this *dictum,* the Massachusetts case relied upon for support of the statement, i.e., *Newhall v. Ward Baking Co.,* 240 Mass. 434, 134 N.E. 625 (1922), a case involving the presence of part of a nail in a loaf of bread, made clear that a negligence action could be maintained only by reason of the well-settled exception to the privity requirement applicable in cases involving the negligent preparation of food, which exception had been fashioned in recognition of the serious consequences to human life resulting from negligent food preparation. *Id.* 134 N.E. at 626.

In *McNally v. Nicholson Manufacturing Company,* Me., 313 A.2d 913 (1973), the trial court had dismissed, for lack of privity, a warranty claim brought against the manufacturer by the employee of the buyer of a chipping machine for injuries sustained when a piece of wood which was expelled through an orifice in the side of the machine struck plaintiff in the head. The trial court sustained a separate strict liability claim, on the theory that the Law Court had judicially adopted that theory. The Law Court disagreed with both trial court rulings and, in holding that the strict liability count failed to state a claim, the Law Court traced the development of the privity requirement under Maine law. The court opined that the privity requirement "took firm root in the tort law of products liability . . . subject only to some exceptions for particular kinds of products deemed 'inherently dangerous.'" *Id.* at 924. The court then observed that the *MacPherson* approach was "assimilated" into Maine Law in *Flaherty, id.,* and that

[i]t was absorbed . . . not as an outright repudiation of past doctrinal error but as reaffirming "privity" to be the general governing principle subject to the exception

"... of substances or instrumentalities which are imminently dangerous ... [h]igh explosives, poisons and impure foods ... [being] examples."

as extended by *MacPherson v. Buick* to include products

> "... not ordinarily ... imminently dangerous instrumentalities ... that ... may become so through latent defects...."

*Id.* at 924.

The court went on to state that it had "fortuitously occurred in Maine that after" *Flaherty,* no case had come to the court enabling it to reassess the privity requirement in light of progressive developments in other jurisdictions. *Id.* at 924. The court proceeded to hold that the strict liability statute enacted by the Maine Legislature in 1969 was not to affect transactions occurring before October 1, 1969 and therefore that the privity requirement in *Flaherty* controlled.

In *Burke v. Hamilton Beach Division, Scovill Manuf. Co.,* Me., 424 A.2d 145 (1981), the trial court granted judgment on the pleadings in favor of the manufacturer of an electric mixer which allegedly malfunctioned twenty years after purchase, causing it to turn on while plaintiff was inserting beater blades. Companion claims based on negligence and warranty were held barred by the statute of limitations. On appeal, the Law Court addressed the sufficiency of the complaint in respect to the privity issue, *see id.* at 148 n. 5, holding that the "mixer, which functioned perfectly for nearly twenty years, [could not be brought] within the 'imminently dangerous' [products] exception to the nonprivity bar." *Id.* at 150. The court stated:

> While other jurisdictions applied the *MacPherson* exception to engulf the privity rule, ... Maine never expanded upon *MacPherson* far enough to include mechanical products generally within the exception to the privity strictures.

*Id.* at 150. Two justices, who dissented from the Law Court decision affirming judgment for the manufacturer, stated that even under the tort theories on which the majority relied (which the dissenters indicated should be reconsidered), it was inappropriate to rule "in the first instance as a matter of law that the appliance in question could not have been so defective as to be inherently dangerous." *Id.* at 151.

This analysis of significant cases dealing with the privity requirement in products liability actions sounding in negligence indicates that Maine law followed the national trend toward gradual relaxation of the privity requirement. While many jurisdictions adopted the *MacPherson* exception so as to completely engulf the privity rule, "no such transformation took place in Maine." *Larue v. National U. Elec. Corp.,* 571 F.2d 51, 55 (1st Cir.1978). *See also McNally v. Nicholson Manufacturing Company,* 313 A.2d at 924. Thus, at the time plaintiffs filed the present action and at the time of this Court's judgment, Maine law required that a plaintiff asserting a products liability claim sounding in negligence be in privity with the defendant, unless the product came within a specific exception to that requirement.

## III. MERITS OF PLAINTIFFS' CLAIM FOR RELIEF FROM JUDGMENT

There are two bases for denying plaintiffs' motion for relief from judgment: (1) their failure to appeal; and (2) the absence of extraordinary circumstances.

### A. Failure to Appeal

Plaintiffs contend that it would have been futile to appeal to the First Circuit or to request certification to the Law Court in this action, since *Hurd* was "clearly controlling precedent." But even though the same type of defect was at issue in *Hurd* a close reading reveals that the posture of the *Hurd* case was quite different from the present case, and that an appellate reversal of the judgment entered against these plaintiffs was by no means precluded.

*Hurd v. Hurd,* Me., 423 A.2d 960 (1981), involved the dismissal, after a bench trial, of negligence and warranty claims against the manufacturer of a front-end loader which was allegedly designed in such a way as to permit the unintended activation of its boom arm. The loader, a model "Michigan 55A" manufactured by Clark Equipment Co., had been operated by the plaintiff "on

several occasions" prior to the accident. While operating the loader, the plaintiff left the cab to assist others on the ground and while climbing back into the cab he brushed against the lever causing the boom arm to come down with great force. The trial justice found with respect to the negligence claim that Clark had not violated any duty of care in designing the loader or in failing to warn of its dangers. The issue on appeal was the sufficiency of the evidence to support the finding of no negligence. The Law Court majority decided, however, to affirm the dismissal on the ground that the loader did not fall within the "imminently dangerous instrumentality" exception to the privity requirement in products liability negligence actions. The majority relied on *Flaherty* and *McNally* for the proposition that under Maine law the "imminently dangerous instrumentality" exception to the privity requirement was very narrow and that it did not represent the all-encompassing abrogation of the privity requirement obtaining in states adopting *MacPherson.* Relying on four Maine cases, which had found "imminently dangerous" such products as explosives, poisons, contaminated foods and vacuum cleaners with unguarded high speed fans, the majority said:

> This court's reasoning in *Flaherty,* as adhered to in subsequent cases, leads inescapably to the conclusion that the hazard, which the trial justice found was "obvi-

ous" . . . could not also have been "imminently dangerous". . . .

The decision appears to rest on the determination by the presiding trial justice that the hazard was "obvious." The loader was a 1960 model 55A. The loader in the present case is a 1955 Model 75A. The validity of the trial justice's finding in *Hurd* was not ruled upon directly by the Law Court, the majority having apparently assumed the correctness of the finding and the concurring justices having expressly stated that the trial justice's ruling that the plaintiff had failed to sustain his burden of proving negligent design was "fully supported by the evidence." *Hurd* at 965. Since the present plaintiffs were not parties to the *Hurd* action, it seems clear that they were not bound in this action by any factual finding as to the "obviousness" of the defect in *Hurd.* And, if "obviousness" depends to any degree on the perceptions of the plaintiff, in the sense of his assumption of risk or contributory negligence, the plaintiff in the present case would have had an additional factual basis upon which to distinguish *Hurd* on appeal, there being no evidence that the present plaintiff ever operated the loader prior to the accident.[4]

Moreover, the prospects for a successful appeal to the First Circuit in this action would seem to have been reasonably good, viewed in light of *Larue v. National U. Elec. Corp.,* 571 F.2d 51 (1st Cir.1978).[5]

---

4. The briefs before the Maine Supreme Judicial Court in *Hurd v. Hurd,* Me., 423 A.2d 960 (1981), indicate that the plaintiff in that case had operated the loader several times prior to the accident, that he appreciated the danger in mounting and dismounting with the boom arm raised, and that he had operated many loaders similar to the one in question. *See* Clark Equipment's brief, at 10–12, 16 & 17; Richard Hurd's brief, at 1–5; Plaintiff's brief, at 26, 28.

5. The First Circuit held, in *Larue v. National U. Elec. Corp.,* 571 F.2d 51 (1st Cir.1978), that the district court had correctly denied a motion for a directed verdict and a motion for judgment n.o.v. on the basis of lack of privity, where there was sufficient evidence before the court that the (allegedly) defectively designed vacuum cleaner was an "imminently dangerous" instrument under Maine law. The facts were that one end of the cannister-type vacuum

cleaner was opened, two filters removed, and its unguarded fan mechanism was "manifested in such a way as not to be apparent to the average user." *Id.* at 56. The sharp fan blades were close enough to the top of the casing to cut intruding objects. "When the motor was running, one could not see the motion of the blades and could not readily discern the danger." *Id.* Fingers and other parts of the body could be inserted in the casing hole. In order to clean the machine, plaintiff's mother had removed two filters from above the fan housing and motor. She left the vacuum plugged in, with the filters out and the hood covering half open, while her 11-year old child, the plaintiff, and his sister were home alone. While playing in his pajamas on the vacuum, as if with a toy car, plaintiff testified that he sat on the yellow plastic filter support which rested on the metal casing covering the fan, the motor turned on, and his penis slipped through the opening in

Failure to appeal an adverse judgment unquestionably requires denial of relief from judgment where there is no clearly adverse rule rendering appeal futile. *See Ackermann v. United States,* 340 U.S. at 198, 71 S.Ct. at 211; *Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645 (1st Cir. 1972); *Rinieri v. News Syndicate Co.,* 385 F.2d 818, 822 (2d Cir.1967).

**B.** *Absence of Extraordinary Circumstances*

■ The only extraordinary circumstance to which these plaintiffs point in justification of their request for relief from judgment is that *Hurd,* the authority upon which the present judgment was predicated, represented an aberration in Maine law, "clearly out of touch with [then-] present law." *See* Plaintiffs' Response to Objections to Recommended Decision, filed July 21, 1982, at 2. Plaintiffs claim that *Buffalo Forge* was in fact the long-standing rule and that *Hurd* was "a short term and erroneous change in the long standing law." *Id.* at 3. But as is clearly seen from the foregoing account *Hurd* was no fluke in Maine law, but a decisional dinosaur pronounced extinct by the Law Court in *Buffalo Forge.*

As *Pierce* and other authorities [6] make abundantly clear, a mere change in decisional law does not constitute an "extraordinary circumstance." Plaintiffs elected to proceed in the federal forum, thereby voluntarily depriving themselves of the opportunity to attempt to persuade the Maine Law Court to abrogate the privity requirement, despite an open invitation, *see McNally,* at 924, to do exactly that.

## IV. CONCLUSION

For the foregoing reasons plaintiffs' motion for relief from judgment is DENIED.

## APPENDIX

### RECOMMENDED DECISION OF PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

*I. The History of the Case.*

In May, 1973, plaintiff Carl O. Brown (hereafter "plaintiff") was seriously injured while using a front-end loader designed and manufactured by defendant Clark Equipment Company. The accident occurred when plaintiff exited the cab of the front-end loader after having left the bucket in a raised position. As plaintiff was exiting the cab, he inadvertently brushed against the control lever; this caused the bucket to drop and plaintiff was crushed between the boom arm of the bucket and the body of the loader.

In June, 1978, plaintiffs filed a four-count complaint against defendant.[1] One theory of relief, contained in Count I, was that the loader was negligently designed and manufactured because of the location of the control lever and the lack of any safety device

---

the filter support and casing into the fan. The First Circuit held that "exposure to the risk of injury from the fan was a hidden but substantial incident of the vacuum cleaner's use." *Id.* at 56.

It would seem that a lever which, when brushed, causes the loader boom arms to drop violently poses a greater risk of injury by virtue of a defect in design than does a vacuum cleaner whose dangerousness only arises if operated while partially dismantled. *Larue* indicates that the question as to whether a product falls within the "imminently dangerous instrumentality" exception may be for the jury. *See id.* at 56. *See also Flaherty v. Helfont,* 123 Me. at 138, 122 A. 180 [unnecessary to address "[w]hether the jury were justified in finding ... the truck ... so defective as to be an imminently dangerous instrumentality"].

6. *See, e.g., Lubben v. Selective Serv. Sys. Local Bd. No. 27,* 453 F.2d 645, 650–52 (1st Cir.1972); *Title v. United States,* 263 F.2d 28, 31 (9th Cir.1959); *Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir.1952); *Atwell v. Equifax, Inc.,* 86 F.R.D. 686 (D.Md.1980). *See also* Comment, *Federal Rule of Civil Procedure 60(b); Standards for Relief From Judgments Due to Changes in Law,* 43 U.Chi.L.Rev. 646, 662 (1976); Note, *Pierce v. Cook & Co.: Rule 60(b)(6): Relief From Judgment For Change of State Law In a Diversity Case,* 62 Va.L.Rev. 414, 423 (1976).

1. The other plaintiff was plaintiff's wife, who sued for loss of consortium (Count IV).

to prevent inadvertent activation while leaving the cab.

In July, 1981, the undersigned Magistrate heard oral argument on defendant's motion for summary judgment. The argument focused on whether Count I should be dismissed because plaintiff lacked contractual privity with defendant. In other words, the issue was whether plaintiff's negligence theory should be barred because plaintiff had had no contractual relationship with defendant.

Defendant relied upon the then-recent decision of the Maine Law Court in *Hurd v. Hurd and Clark Equipment Company*, 423 A.2d 960 (Me.1981). *Hurd* was a case of personal injury caused by one of defendant's front-end loaders. In *Hurd* the injury occurred in the same way as here, viz., Hurd was crushed between the boom arm and the body of the loader when he inadvertently brushed against the control lever. The trial justice held that the negligence claim had not been proved. On appeal, the Law Court affirmed on the ground that the negligence claim was barred by the plaintiff-user's lack of privity with the defendant-manufacturer. Two justices disagreed with this reasoning, believing that the privity issue was of such importance and difficulty that the court should not reach out to decide it in a case where the negligence claim could be disposed of on a lack-of-evidence ground.

Plaintiff strenuously argued that this Court should not follow *Hurd* because the Law Court had been wrong to decide the privity issue and had decided it incorrectly.

On July 17, 1981, I recommended that defendant's motion for summary judgment be granted, saying:

> This Court cannot pass judgment on the quality of Maine common law-making and appellate practice. In a diversity case it is our duty under *Erie* to take the state's substantive law as we find it. Since *Hurd's* message is unmistakable, defendant's motion for summary judgment must be granted.

The Court followed this recommendation, dismissing this action on August 10, 1981.

On April 5, 1982, the Law Court abruptly reversed itself and held that *Hurd* was wrong when it decided that lack of privity barred a negligence action against a manufacturer. *Adams v. Buffalo Forge Company*, 443 A.2d 932 (Me.1982).

Plaintiffs have filed a motion for relief from judgment pursuant to F.R.C.P. 60(b)(6). The motion has been briefed and argued.

## II. Does Justice Require That Plaintiffs Be Relieved From The Judgment?

F.R.C.P. 60(b)(6) authorizes a court to relieve a party of a final judgment for any reason "justifying relief from the operation of the judgment". In a diversity case, this Court should place itself in the position of the Maine Superior Court and ask: What would the Superior Court do with a Rule 60(b)(6) motion following *Buffalo Forge*?[2]

Rule 60(b)(6) provides the court "a grand reservoir of equitable power to do justice in a particular case." Field, McKusick & Wroth, *Maine Civil Practice*, § 60.11 (1970). This reservoir must, however, be sparingly tapped, so as not to offend principles of finality.

Two factors appear to be paramount in defining the justice of the situation. First, how crucial is the intervening change of law? Second, how much time has passed?

Application of the first factor is straightforward. The change of law was abrupt and crucial. This Court's judgment is based upon the very doctrine which has now been repudiated by the Law Court.

The timing factor appears pivotal. A Superior Court justice who relied upon *Hurd* only a month before *Buffalo Forge* would probably find the tug of justice irresistible in granting Rule 60(b)(6) relief. On the other hand, if the Law Court's reversal of doctrine had occurred several years after final judgment, then interests of finality would require denial of the motion.

---

**2.** F.R.C.P. 60(b)(6) and M.R.C.P. 60(b)(6) are identical. At oral argument counsel stated that

they knew of no such motion now pending in Superior Court.

Here, *Buffalo Forge* followed this Court's judgment by 8 months, and plaintiffs filed their motion 10 days after that decision.[3]

Defendant argues that if a Superior Court justice granted Rule 60(b)(6) relief in this case, he would be compelled to do so in *Hurd* itself (Defendant's Memorandum, pp. 6–7). This argument is unpersuasive. In *Hurd,* the plaintiff had a trial and failed to prove defendant's negligence. Here, plaintiff has never had a chance to prove defendant's negligence and seeks only his day in court.

Ultimately, application of Rule 60(b)(6) comes down to the articulation of a theory of justice. In my view, legitimate interests in finality are outweighed in this case by the following factors:

1. Plaintiff's interest in having his day in court was barred by this Court's reliance upon a then-recent state supreme court decision which clearly called for dismissal;

2. This doctrine has now been definitively repudiated by the state supreme court; and

3. The repudiation occurred only 8 months after this Court's judgment.

Accordingly, I recommend that plaintiffs' motion for relief from judgment be granted to the extent of restoring Counts I and IV of the complaint.[4]

DATED at Portland, Maine this 8th day of June, 1982.

/s/ Melvyn Zarr
MELVYN ZARR
United States Magistrate

---

3. The only time limit stated in Rule 60(b) is a one-year time limit which only applies to motions under clauses (1), (2), and (3).

4. Count IV is the wife's claim for loss of consortium, which is simply derivative of Count I. Plaintiffs have not sought to restore Count III, and the dismissal of Count II does not share the compelling features of Count I.